973 F.2d 812
 Patrick D. GREANY, et al., Plaintiffs-Appellants,
v.
WESTERN FARM BUREAU LIFE INSURANCE COMPANY, a Colorado
corporation, et al.; Lincoln National Life
Insurance Company, an Indiana
corporation, Defendants-Appellees.
Patrick D. GREANY, et al., Plaintiffs-Appellees,
v.
WESTERN FARM BUREAU LIFE INSURANCE COMPANY, a Colorado
corporation, et al., Defendants-Appellants,
and
Lincoln National Life Insurance Company, an Indiana
corporation, Defendant.
 Nos. 91-35098, 91-35125.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 7, 1992.
Decided Sept. 1, 1992.
 
 Peter M. Kirwan and Michael G. Garrity, Kirwan & Barrett, Bozeman, Mont., for plaintiffs-appellants-cross-appellees.
 Gene I. Brown and Steve Reida, Landoe, Brown & Planalp, Bozeman, Mont., for defendants-appellees-cross-appellants.
 Marshal L. Mickelson, Corette, Smith, Pohlman & Allen, Butte, Mont., for defendant-appellee.
 Appeal from the United States District Court for the District of Montana.
 Before: TROTT and KLEINFELD, Circuit Judges, and DIMMICK,* District Judge.
 TROTT, Circuit Judge:
 
 
 1
 Patrick Greany, an employee of Western Farm Bureau Life Insurance Company ("Western") and Mountain West Farm Bureau Mutual Insurance Company ("Mountain West") (collectively "Farm Bureau"), and his wife Marcia Greany appeal the district court's dismissal of their common law claims brought against Western, Mountain West, Western Farm Bureau Group Health Insurance Trust ("the Trust"), and Lincoln National Life Insurance Group ("Lincoln National"). The Greanys' claims were based on Lincoln National's denial of insurance benefits. Among the theories of liability unsuccessfully advanced by the Greanys was a claim based on the federal common law of estoppel. Western, Mountain West, and the Trust appeal the judgment entered by the district court against Western following a jury verdict in favor of the Greanys. The jury verdict was based on Western's alleged failure to act with the required degree of competence in procuring adequate health insurance coverage for the Greanys. We have jurisdiction over the timely appeals pursuant to 28 U.S.C. § 1291 (1988).
 
 I FACTS AND PROCEEDINGS BELOW
 
 2
 In March of 1977, Patrick Greany began working as an insurance salesman for Farm Bureau. As a Farm Bureau employee, Patrick was offered group health insurance coverage. In April of 1981, Patrick enrolled in a Farm Bureau group health insurance plan under a policy issued by Lincoln National ("the group plan"). The group plan provided $1,000,000 in lifetime benefits and covered most medical expenses related to pregnancy and childbirth. Premiums on the group plan were shared by Patrick and Farm Bureau.
 
 
 3
 On July 15, 1983, Patrick submitted his resignation from employment with Farm Bureau and informed the company his last day of employment would be August 1, 1983. Prior to submitting his resignation, Patrick began investigating various insurance options because he knew that eventually he would no longer be eligible for coverage under the group plan when he left Farm Bureau's employ. On July 15, 1983, Patrick completed and submitted an application to obtain an insurance policy through Western States Life Insurance Company ("Western States"), Patrick's new employer. Sometime during the last week of July 1983, Patrick requested that the Western States policy go into effect on September 1, 1983, based on his belief that the group plan coverage continued until August 31, 1983.
 
 
 4
 Upon receiving Patrick's resignation, Farm Bureau sent Patrick a Mountain West form entitled "Notice of Terminated Agents Privileges," and a Western form entitled "Notice of Conversion Insurance." Patrick received both forms on approximately July 25, 1983. The forms stated that Patrick had thirty-one days after terminating employment to convert the group plan into an individual policy.
 
 
 5
 Because Patrick was interested in comparing the cost of the Western States policy with a conversion policy available through Lincoln National, Patrick sent Farm Bureau a memo on August 1, 1983, requesting that the necessary conversion information and forms be sent to him. On August 5, 1983, Farm Bureau completed the front side of a "Preliminary Request for Conversion Information" form ("conversion request form") and forwarded it to Patrick. On the front of the conversion request form, Farm Bureau noted that the group plan coverage had terminated on August 1, 1983. After Patrick received the conversion request form from Farm Bureau, he completed the back side and forwarded it to Lincoln National.
 
 
 6
 Conversion representatives for Lincoln National reviewed Patrick's conversion request form and concluded, based on their understanding of the "Master Contract" between Lincoln National and Farm Bureau, that the date of termination of group plan coverage contained on the conversion request form should have been August 31, 1983, not August 1, 1983. Lincoln National sent Patrick a letter on August 25, 1983, attaching conversion information and stating that "your group coverage terminates August 31, 1983."
 
 
 7
 On August 26, 1983, Marcia Greany went into premature labor and delivered a two pound seven ounce baby girl who had a hole between her main pulmonary artery and her aorta. The Greanys incurred approximately $62,000 in medical expenses associated with the child's premature birth and subsequent medical care.
 
 
 8
 Patrick contacted Lincoln National on August 29, 1983, to inform the insurer of his daughter's premature birth. A Lincoln National agent confirmed that the Greanys were covered under the group plan until August 31, 1983.
 
 
 9
 However, the Greanys' expectation of coverage through August 31, 1983, abruptly evaporated. Lorna Young, a Farm Bureau employee, contacted Lincoln National on September 2 and 9, 1983, to inform Lincoln National that an incorrect date had been used by Lincoln National in evaluating the Greanys' coverage under the group plan. Young apprised the Lincoln National conversion agents of a modification to the Master Contract that changed the coverage termination date to coincide with the last day of employment. The district court record establishes that the amendment to the Master Contract that changed the termination of coverage to the last day of employment had gone into effect on April 1, 1982. The Lincoln National conversion agents contacted Lincoln National's new business division and confirmed that the Farm Bureau Master Contract was being revised to change the coverage termination date to the last day of work. The conversion agents, in dealing with Patrick, had apparently referred to a version of the Master Contract that did not include the recent amendments regarding coverage termination.
 
 
 10
 In a letter dated September 9, 1983, Lincoln National informed the Greanys that the termination date of August 31, 1983, quoted in the prior letter, was incorrect. The Greanys were also notified that the group plan benefits had actually terminated on August 1, 1983. Due to Lincoln National's error, the Greanys were given an opportunity to convert the group plan to an individual policy prior to October 1, 1983. Lincoln National thereafter refused to pay any of the Greanys' claims under the group plan. The Greanys converted the group plan into an individual policy with Lincoln National. Lincoln National paid the full $25,000 benefit available under the conversion policy. The Greanys also made a claim on their Western States policy and received a payment of $29,000. All but approximately $7,000 of the Greanys' medical expenses of $62,000 was paid by either Lincoln National or Western States.
 
 
 11
 The Greanys filed a complaint on August 19, 1986, against Farm Bureau, the Trust, and Lincoln National alleging: Count I--wrongful denial of benefits under the group plan; Count II--violations by Lincoln National of Montana's unfair claims settlement practice laws; Count III--violations of Montana's mandatory insurance content laws; Count IV--interference by Farm Bureau and the Trust with the Greanys' contractual and business relations with Lincoln National; and Count V--negligence by Farm Bureau in failing to provide the Greanys with adequate health insurance coverage.[1]
 
 
 12
 In the district court, Farm Bureau alleged the group plan was an employee benefit plan covered by the terms of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461 (1988); the Greanys did not contest this allegation. Based on this concession, the district court dismissed all of the Greanys' claims except Count III (violation of Montana's statute regulating conversion policies) and Count V (negligence), concluding that most of the claims were preempted by ERISA.[2]
 
 
 13
 On September 10, 1990, a jury trial commenced on the remaining two claims. At the close of the evidence, the district court granted Lincoln National's motion for directed verdict or dismissal of Count III. The jury returned a verdict against Mountain West in favor of the Greanys on Count V and awarded them $7,000 in compensatory damages[3] and $75,000 in punitive damages.
 
 
 14
 Both sides filed notices of appeal. Farm Bureau challenges the sufficiency of the evidence, the punitive damage award, and the district court's failure to dismiss the negligence claim against it. The Greanys challenge the district court's dismissal of their claims.
 
 II STANDARD OF REVIEW
 
 15
 We review de novo a grant of summary judgment. Felton v. Unisource Corp., 940 F.2d 503, 508 (9th Cir.1991). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Tzung v. State Farm Fire and Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989).
 
 
 16
 ERISA preemption is a conclusion of law reviewed de novo. Olson v. General Dynamics Corp., 951 F.2d 1123, 1125 (9th Cir.1991). We review for clear error the district court's findings regarding whether a benefit is provided pursuant to an ERISA plan. See Nevill v. Shell Oil Co., 835 F.2d 209, 211 (9th Cir.1987) (the district court's finding that a special separation benefit was offered as part of the ERISA plan is a finding of fact reviewed for clear error).
 
 III DISCUSSION
 
 17
 A DISTRICT COURT'S REVIEW OF THE PLAN ADMINISTRATOR'S ACTIONS
 
 
 18
 The Greanys contend the district court reviewed for an abuse of discretion the plan administrator's actions when it should have reviewed the actions de novo. See generally Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111-15, 109 S.Ct. 948, 954-56, 103 L.Ed.2d 80 (1989). The Greanys focus on the magistrate's statement that the insurance policy was being strictly construed in favor of Lincoln and therefore coverage terminated on August 1, 1983. The Greanys objected to the magistrate's finding. The district court's August 21, 1990 order affirming the magistrate's finding specifically stated that it would review de novo findings which were objected to by the parties. There is no indication in the record that the district court, upon subsequent review of the magistrate's finding, applied a deferential standard of review to the plan administrator's actions. Thus, the Greanys cannot demonstrate that the policy and claims were reviewed by the district court using any standard other than de novo. The record belies their contention, and we reject it.
 
 
 19
 B ERISA'S APPLICABILITY TO THE CONVERSION POLICY
 
 
 20
 "ERISA's pre-emption provision does not refer to state laws relating to 'employee benefits,' but to state laws relating to 'employee benefit plans'...." Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 7, 107 S.Ct. 2211, 2215, 96 L.Ed.2d 1 (1987) (emphasis omitted). The Greanys conceded in district court that the group plan was an employee benefit plan falling under the purview of the ERISA provisions. See 29 U.S.C. §§ 1002(1) (definition of "employee welfare benefit plan"), 1002(3) (definition of "employee benefit plan"), 1002(5) (definition of "employer"), 1003(a) (ERISA coverage enunciated). Therefore, any of the Greanys' claims that relate to the group plan are governed by ERISA.
 
 
 21
 The Greanys argue, however, that the conversion policy and the facts surrounding its processing are merely an employee benefit that is free from ERISA's broad reach. We disagree.
 
 
 22
 The opportunity to convert the group plan to an individual policy is a benefit provided pursuant to the group plan. Individual conversion rights of group health or disability plans are provided for both by ERISA, see 29 U.S.C. §§ 1161 and 1162, and by Montana law, see Mont.Code Ann. §§ 33-22-508(1).[4] The predicate to the conversion right, under both ERISA and Montana law, is qualification as a beneficiary under a group health or disability plan. See 29 U.S.C. § 1161(a) (qualified beneficiaries of a group health plan are entitled to elect continuation of coverage under the plan); Mont.Code Ann. § 33-22-508(1) (group disability insurance policies must allow an insured party under the policy the opportunity to convert to an individual policy if the party is no longer eligible for membership in the class covered by the policy). No conversion benefits would be available unless the party seeking the conversion policy was an eligible insured beneficiary of a group plan.
 
 
 23
 The group plan in this case, which the Greanys admit is an ERISA plan, provides for the conversion benefit. Because the Greanys would not be eligible for a conversion policy without first belonging to the class of beneficiaries covered by the ERISA group plan, we conclude that the individual conversion benefits are part of the ERISA plan and are thus governed by ERISA. Had the Greanys not received health benefits pursuant to the ERISA group plan, they would not have been eligible to receive conversion benefits, and would have no cause of action arising from the conversion policy. Despite the Greanys' attempts to recharacterize their relationship with Farm Bureau to create a duty independent of the group plan, "[t]here would be no relationship or cause of action ... without the Plan." Gibson v. Prudential Ins. Co., 915 F.2d 414, 417 (9th Cir.1990). Therefore, any of the Greanys' claims that arise from facts surrounding the conversion benefit are to be analyzed with reference to ERISA. See FMC Corp. v. Holliday, 498 U.S. 52, 111 S.Ct. 403, 407-08, 112 L.Ed.2d 356 (1990) (the state law governing subrogation provisions in insurance contracts "reference[d]" the benefit plans governed by ERISA); Tingey v. Pixley-Richards W., Inc., 953 F.2d 1124, 1132-33 (9th Cir.1992) (state mandated conversion rights for group health benefits subject to ERISA provisions); Henkin v. Northrop Corp., 921 F.2d 864, 866-67 (9th Cir.1990) (group policy providing for conversion benefits treated by court as part of the ERISA plan and analyzed under the ERISA preemption provisions); Nevill, 835 F.2d at 211 (separation allowance was offered under the ERISA plan and was therefore governed by ERISA).
 
 C ERISA PREEMPTION
 
 24
 "ERISA contains one of the broadest preemption clauses ever enacted by Congress." PM Group Life Ins. v. Western Growers Assur. Trust, 953 F.2d 543, 545 (9th Cir.1992) (quotation omitted). The ERISA provisions "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). A state law "relate[s] to" an employee benefit plan "if it has a connection with or reference to such a plan." Fort Halifax, 482 U.S. at 8, 107 S.Ct. at 2215 (quotation omitted).
 
 
 25
 Nevertheless, a state law that ordinarily would be preempted by ERISA may be "saved" from preemption if it "regulates insurance." See 29 U.S.C. § 1144(b)(2)(A) (the saving clause); 29 U.S.C. § 1144(b)(2)(B) (the deemer clause); FMC Corp., 498 U.S. at ----, 111 S.Ct. at 407 (although ERISA preemption is broad, the saving clause returns to the states the power to enforce state laws that "regulates insurance," but "[u]nder the deemer clause, an employee benefit plan governed by ERISA shall not be 'deemed' an insurance company, [or] an insurer ... for purposes of state laws 'purporting to regulate' insurance companies or insurance contracts"). With the foregoing in mind, we now turn to an analysis of the various counts at issue.
 
 1. Negligence--Count V
 
 26
 The Greanys were permitted to proceed to trial against Farm Bureau on the theory that Farm Bureau, acting as the Greanys' insurance agent in procuring the conversion policy, "fail[ed] to act with a minimum degree of care owed by a professional insurance agent to its customers...." The district court upheld this theory because it concluded "the Greany's [sic] claim arises out of facts surrounding the conversion policy rather than the ERISA plan, thus the preemption defense is inapplicable."
 
 
 27
 The Greanys first argue that neither the sale nor the content of conversion policies is governed by ERISA because Farm Bureau was required by Mont.Code Ann. § 33-22-508 to provide the conversion policy. Farm Bureau correctly points out the basis of the Greanys' negligence claim is not a violation of the Montana statute requiring conversion benefits, but revolves instead around the group plan and conversion benefits themselves. Thus, the Greanys cannot rely on § 33-22-508 to "save" their negligence claim from preemption.
 
 
 28
 The Greanys also argue that Farm Bureau breached a duty owed to them as customers. Because we conclude the conversion benefits are governed by ERISA, see supra Part III.B, the Greanys' negligence claim must be based on duties independent of the conversion benefit provided pursuant to the ERISA group plan to survive ERISA preemption. The Greanys' attempts to analogize Farm Bureau to a private insurance agent fail. Farm Bureau was acting in all respects as an employer, not in the capacity as a private insurance agent. Outside of the employment relationship, the Greanys never requested that Farm Bureau investigate various insurance options and recommend a policy for the Greanys. Contrary to the Greanys' assertions, they could not have brought a claim against Farm Bureau, the Trust, or Lincoln National regarding the conversion rights in the absence of the ERISA group plan.
 
 
 29
 The negligence claim was not based on breach of a duty owed to the Greanys by Farm Bureau that was independent from the duties created by the group plan. In reality, the Greanys challenge the administration of ERISA plan benefits, specifically the conversion rights. Farm Bureau's conduct regarding the conversion benefits was merely a continuation of the duties it had as an employer in providing the group plan. Therefore, the state negligence claim "relate[s] to" the ERISA group plan and is preempted by ERISA. See Tingey, 953 F.2d at 1131 (all claims which involve the ERISA plan, even if drafted to refer to the employment relationship, are preempted by ERISA); Lea v. Republic Airlines, Inc., 903 F.2d 624, 632 (9th Cir.1990) (state claims for negligence, breach of contract, fraud, and equitable estoppel relating to an ERISA plan were preempted). The district court erred in allowing the state negligence claim to proceed to trial. The jury verdict awarding compensatory and punitive damages is reversed.[5]
 
 
 30
 2. Unfair Claims Settlement Practices--Count II
 
 
 31
 The district court granted summary judgment on the Greanys' claim that the defendants had violated Montana's unfair claims settlement practices statutes, Mont.Code Ann. §§ 33-18-101, et seq. Citing Kanne v. Connecticut Gen. Life Ins. Co., 867 F.2d 489 (9th Cir.1988) (per curiam), cert. denied, 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989), the district court concluded that because the Greanys were pursuing a remedy for improper claims processing, the state causes of action were preempted.[6] The Montana unfair claims settlement practices statutes do not "regulate[ ] insurance" as discussed in 29 U.S.C. § 1144(b)(2)(A), but are civil enforcement provisions. The district court was correct in granting summary judgment for the defendants on the Greanys' improper claims processing claim because this state law claim is preempted by ERISA. See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 57, 107 S.Ct. 1549, 1558, 95 L.Ed.2d 39 (1987) ("state law suit asserting improper processing of a claim for benefits under an ERISA-regulated plan is not saved ... and therefore is preempted"); Tingey, 953 F.2d at 1133 (claim for bad faith insurance settlement practices preempted by ERISA); Kanne, 867 F.2d at 493 ("private right of action for violation of § 790.03(h) [unfair insurance practices] is preempted by ERISA") (footnote omitted).
 
 
 32
 3. Tortious Interference with Contract--Count IV
 
 
 33
 Prior to trial, the district court granted the defendants' motion to dismiss this claim because it found that the ERISA plan terminated on August 1, 1983. The court concluded that because no contractual relationship existed after that date, Farm Bureau and the Trust could not have interfered. The Greanys argue that the district court ruling was in error because Montana law provides for a cause of action for tortious interference with business relations not involving an existing contract.
 
 
 34
 The Greanys' claim is based on conduct surrounding the administration of the ERISA plan benefits. The contractual interference claim "relate[s] to" the ERISA policy and is preempted by ERISA. See Tingey, 953 F.2d at 1131 (claim for intentional interference with contract is preempted if it relates to the ERISA plan); Gibson, 915 F.2d at 416-17 (state law causes of action which arose from the handling and disposition of claims to ERISA plan benefits were preempted by ERISA). Although the district court did not explicitly find the claim was preempted by ERISA, we may affirm the district court "on any ground finding support in the record, even if the district court relied on the wrong grounds or wrong reasoning." Marino v. Vasquez, 812 F.2d 499, 508 (9th Cir.1987) (citations omitted). Accordingly, we affirm the district court's ruling on the basis of preemption by ERISA.
 
 
 35
 4. Montana's Statute Regulating Conversion Policies--Count III
 
 
 36
 During trial, the district court heard argument on whether Lincoln National had violated Mont.Code Ann. § 33-22-508.[7] The Greanys argued "the insurer must allow the insured to select his conversion policy from all the policy forms the insurer customarily offers to individuals whether in Montana or elsewhere." The Greanys further argued the policy benefits had to be equivalent to those of the group plan. The district court rejected the Greanys' interpretation of Mont.Code Ann. § 33-22-508 and concluded (1) the Montana legislature did not intend the group health insurance conversion policies under § 33-22-508 to require benefits equivalent to those of the group plan, and (2) "customarily issued" in the statute refers to policies customarily issued by the insurer in Montana. The district court concluded that Lincoln National had complied with the statutory requirements and was entitled to entry of judgment on the Greanys' claim.
 
 
 37
 Lincoln National argues that ERISA preempts the Greanys' claim under Mont.Code Ann. § 33-22-508. A recent decision of this court concludes that because ERISA establishes conversion rights for beneficiaries of ERISA group health plans, state statutes concerning conversion rights for group health plans are preempted by ERISA. Tingey, 953 F.2d at 1133. Tingey acknowledged, however, that state insurance conversion laws other than for health benefits may be "saved" from ERISA preemption. Id. at n. 5 (citing Henkin, 921 F.2d at 867 (conversion rights for accidental death insurance benefits not preempted)). Because Mont.Code Ann. § 33-22-508 does not cover group health plans per se but concerns "group disability insurance polic[ies]" and because the parties have not briefed the issue in any detail, we decline to tackle the preemption argument. We do so because even if we were to conclude that the cause of action under Mont.Code Ann. § 33-22-508 was not preempted by ERISA, the district court's interpretation of the state statute was correct.
 
 
 38
 In response to the Greanys' argument that the statute requires conversion benefits equivalent to those provided under the group plan, the district court relied on the legislative history of § 33-22-508 to conclude the legislature did not intend to mandate equivalent conversion benefits. We agree with the district court's reasoning. When the Montana legislature required equivalent benefits for group life insurance and at the same time deleted language in the drafts of § 33-22-508 that required equivalent benefits, it intended to allow disparate benefits between group health benefits and subsequent conversion policies of the health plan.
 
 
 39
 The district court also rejected the Greanys' argument that § 33-22-508 required the insurer to offer the insured a choice of all conversion policies offered by the insurer both inside and outside of Montana. The Greanys argue that the district court's construction of the statute essentially added "in the state of Montana" after "customarily issued" in § 33-22-508. We conclude, however, that the district court's construction was reasonable and necessary. The district court was faced with ambiguous statutory language with no legislative history discussing the particular phrase. The district court determined that a contrary construction would have been nonsensical. To require an insurer to offer an insured the choice of every conversion policy it offers in every state would potentially subject the insurer to liability for failure to comply with applicable Montana law. The drafters of the Montana insurance code could not have intended to require the insurer to offer in Montana conversion policies which other parts of the insurance code would prohibit the company from offering in Montana.
 
 
 40
 The district court did not err in interpreting Mont.Code Ann. § 33-22-508(2) to require the insurer to offer the insured the same conversion policies that are offered to all policyholders located in Montana. Based on this interpretation, the district court was correct in dismissing the Greanys' claim because Patrick was offered the choice of the same two plans that are offered to all other Montana residents under the group policy. Lincoln National did not violate Mont.Code Ann. § 33-22-508. Because the district court correctly dismissed the Greanys' claim, we need not address Lincoln National's arguments that the claim could have been dismissed based upon the applicable statute of limitations or because Colorado law, not Montana law, applies to the conversion policy.
 
 D ESTOPPEL--COUNT I
 
 41
 The Greanys' first cause of action alleges that benefits were wrongfully denied in violation of ERISA. The district court, in a pretrial order dated August 21, 1990, concluded that the policy was unambiguous and provided for coverage to terminate on August 1, the last date of Patrick's employment; thus the Greanys had no claim under ERISA for improper claims processing. The Greanys do not challenge this holding. The district court also held, however, that the same conduct of the defendants that could not support an ERISA action for improper claims processing could nevertheless support an action based on equitable estoppel. Prior to trial, a second district court judge reversed this ruling in an order dated September 7, 1990, and dismissed the Greanys' estoppel claim.[8] The second judge relied on Kane v. Aetna Life Ins., 893 F.2d 1283 (11th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990), to hold that federal common law estoppel was not available because the terms of the policy were unambiguous, i.e. could not be read to provide coverage through August 31, 1983, and what the Greanys were asking for was an impermissible amendment or modification of the policy. The Greanys argue the district court misapplied Kane because the provision in the contract at issue, as in Kane, was vague, and Lincoln National's conduct amounted to an interpretation of the provision.
 
 
 42
 ERISA preempts state claims based on equitable estoppel. Ellenburg v. Brockway, Inc., 763 F.2d 1091, 1095 (9th Cir.1985). Some circuits have held that federal common law equitable estoppel-based theories cannot be applied to a claim under ERISA. See Rodrigue v. Western and S. Life Ins. Co., 948 F.2d 969, 970-72 (5th Cir.1991) (citing the Seventh, Eighth, Tenth and Eleventh Circuits). This court, however, has recognized that federal equitable estoppel principles can, in certain circumstances, apply to some claims arising under ERISA. See Davidian v. Southern Cal. Meat Cutters Union and Food Employees Benefit Fund, 859 F.2d 134, 136 (9th Cir.1988); Ellenburg, 763 F.2d at 1096.
 
 
 43
 Ellenburg established four federal common law elements of equitable estoppel that are applicable to an ERISA action:
 
 
 44
 (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.
 
 
 45
 Ellenburg, 763 F.2d at 1096. Davidian narrowed the broad holding of Ellenburg by concluding a party cannot maintain a federal equitable estoppel claim against a trust fund where recovery on the claim would contradict written plan provisions. Davidian, 859 F.2d at 136. The Greanys do not argue an estoppel claim against the Trust, thus the Davidian holding is inapplicable to the case before us. Because the Greanys allege an estoppel claim only against Lincoln National, which does not fit within the Davidian holding because it is not a trust fund, we are faced with the question of whether a federal estoppel claim is available against a non-trust party in the face of contrary written plan provisions.
 
 
 46
 While the Eleventh Circuit in Kane also recognizes that a federal common law claim of equitable estoppel is available in an ERISA action, it has gone one step further by creating two prerequisites to the availability of such a theory. Pursuant to Kane, a federal common law claim of equitable estoppel will be available only where "(a) the provisions of the plan at issue are ambiguous such that reasonable persons could disagree as to their meaning or effect, and (b) representations are made to the employee involving an oral interpretation of the plan." Alday v. Container Corp., 906 F.2d 660, 666 (11th Cir.1990) (citing Kane, 893 F.2d at 1286-87), cert. denied, --- U.S. ----, 111 S.Ct. 675, 112 L.Ed.2d 668 (1991). "Unless both conditions are met ... a beneficiary has no equitable estoppel claim." Simmons v. Southern Bell Tel. and Tel. Co., 940 F.2d 614, 618 (11th Cir.1991).
 
 
 47
 We find the reasoning of Kane and its progeny persuasive. Kane's holding is based on the premise that "the federal common law of equitable estoppel is not available to plaintiffs in cases involving oral amendments to or modifications of employee plans governed by ERISA because ERISA specifically addresses these issues." Kane, 893 F.2d at 1285 (citing Nachwalter v. Christie, 805 F.2d 956, 960 (11th Cir.1986)). See also Rodrigue, 948 F.2d at 971 ("ERISA's writing requirement protects the plan's actuarial soundness by preventing plan administrators from contracting to pay benefits to persons not entitled to them under the express terms of the plan"). Our precedent dictates that a trust fund can never be equitably estopped where payment would conflict with the written agreement. See Davidian, 859 F.2d at 136. Because this court has already denied coverage in some circumstances where payment would be inconsistent with the written plan, see id., Kane is merely a necessary extension of our existing precedent.
 
 
 48
 We can find no compelling reason to allow an estoppel claim to proceed solely because the individual or group to be estopped is other than a trust. This is particularly true where the equitable estoppel claim would result in a payment of benefits that would be inconsistent with the written plan and where an oral amendment or modification would be the practical result of a successful estoppel claim; both outcomes would contradict the writing and amendment requirements of 29 U.S.C. §§ 1102(a)(1) and (b)(3).
 
 
 49
 A plaintiff cannot avail himself of a federal ERISA estoppel claim based upon statements of a plan employee which would enlarge his rights against the plan beyond what he could recover under the unambiguous language of the plan itself.[9] The district court in the case before us determined that the plan provision was unambiguous and provided that insurance coverage terminated on August 1, 1983. After reviewing the applicable plan provisions,[10] we conclude the district judge correctly determined as a matter of law that the language of the Plan was unambiguous.[11] Because the plan was unambiguous, the Greanys cannot avail themselves of the federal common law claim of equitable estoppel as set forth in Ellenburg. A mistake in referring to an outdated form to determine eligibility does not rise to the level of an interpretation of the plan's provisions justifying application of the equitable estoppel doctrine.[12] See Moran v. Aetna Life Ins. Co., 872 F.2d 296, 300 (9th Cir.1989) (estoppel was not applicable to "a business entity that has mistakenly identified itself as the plan administrator by its agent").
 
 
 50
 Besides failing to establish the insurance provision was ambiguous and was interpreted by Lincoln National, the Greanys have failed to allege any facts that would support an estoppel claim against Farm Bureau. The Greanys also do not attempt to distinguish Davidian's holding that a trust cannot be equitably estopped, or challenge the district court's holding that payment would contradict the written terms of the plan. The district court's reliance on Kane and its subsequent dismissal of the Greanys' estoppel claim against all defendants was correct and is affirmed.
 
 IV CONCLUSION
 
 51
 The Greanys' state negligence claim against Farm Bureau regarding the conversion policy must be reversed because the conversion rights are integrally connected to the ERISA plan and the state cause of action is preempted by ERISA. Accordingly, the award of compensatory and punitive damages is vacated. The district court correctly dismissed the Greanys' claims for unfair claims settlement practices, tortious interference with contract, estoppel, and violations of Montana's conversion statute.
 
 
 52
 AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART, AND REMANDED TO THE DISTRICT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. EACH PARTY SHALL BEAR ITS OWN COSTS.
 
 
 
 *
 The Honorable Carolyn R. Dimmick, United States District Judge for the Western District of Washington, sitting by designation
 
 
 [1]
 The case was originally filed in state court, but was removed to federal court by the various defendants. The Greanys were permitted to amend their complaint to include claims under ERISA
 
 
 [2]
 In an Opinion and Order filed August 22, 1990, the district court granted (1) Lincoln National's motion for summary judgment on Count II and the portions of Count III that related to alleged violations of Mont.Code Ann. §§ 33-22-504 and 33-22-509, and (2) Farm Bureau's and the Trust's motion to dismiss Counts II, III, and IV. On September 7, 1990, the district court determined the Greanys' claims in Count I were no longer viable and dismissed the count
 
 
 [3]
 The jury found the Greanys were comparatively negligent for 40% of the damage. Mountain West was found to be 60% responsible. The jury assessed no responsibility to Western. The Greanys were thus awarded $4,200 to be recovered from Mountain West
 
 
 [4]
 Mont.Code Ann. § 33-22-508 provides, in relevant part:
 (1) A group disability insurance policy ... shall contain a provision that if the insurance or any portion of it on a person, his dependents, or family members covered under the policy ceases because of termination of his employment or of his membership in the class or classes eligible for coverage under the policy, or as a result of his employer discontinuing his business, such person shall ... be entitled to have issued to him by the insurer, without evidence of insurability, an individual policy....
 
 
 [5]
 Because the Greanys' negligence claim is preempted by ERISA, we do not need to address Farm Bureau's arguments regarding the district court's ruling to allow into evidence testimony of the prior lawsuit, whether the verdict was supported by substantial evidence, and the correctness of the jury's award of punitive damages
 
 
 [6]
 We reject the Greanys' argument that Kanne was overruled by FMC Corp
 
 
 [7]
 Subsection one of Mont.Code Ann. § 33-22-508 is set forth in n. 4, supra. The subsection of Mont.Code Ann. § 33-22-508 relevant to the Greanys' arguments against Lincoln National is as follows:
 (2) The individual policy, at the option of the insured, shall be on any of the forms then customarily issued by the insurer to individual policyholders with the exception of those policies whose eligibility is determined by affiliation other than by employment with a common entity.
 
 
 [8]
 The Greanys' argument that the district court improperly reversed its previous decision without notice is rejected. Zipfel v. Halliburton Co., 832 F.2d 1477, 1481 (9th Cir.1987) (district court did not abuse its discretion in reconsidering an order by another judge of the same court), cert. denied, 486 U.S. 1054, 108 S.Ct. 2819, 100 L.Ed.2d 921 (1988)
 
 
 [9]
 We stress that adoption of the Kane approach in no way affects the Ellenburg estoppel requirements. A plaintiff must first establish that the plan provision in question is ambiguous and the party to be estopped interpreted this ambiguity. If these requirements are satisfied, the plaintiff may proceed with the equitable estoppel claim by satisfying the precise situational factors set forth in Ellenburg
 
 
 [10]
 The policy provision states, in relevant part:
 An individual's insurance will automatically terminate immediately upon the earliest of the following dates:
 
 
 [1]
 the date the policy terminates,
 
 
 [2]
 the date of the expiration of the last period for which any required contribution agreed to in writing has been made,
 
 
 [3]
 the date of the employee's termination of employment with the Employer
 Master Contract p J.
 
 
 [11]
 At oral argument, the Greanys asserted that the ambiguity was demonstrated when Lincoln National concluded the coverage termination date was different than the date Farm Bureau had noted on the conversion request form. The Greanys would have us believe that both Lincoln National and Farm Bureau arrived at varied termination dates after interpreting the same Master Contract. The facts, however, merely demonstrate an internal communication failure between Lincoln National divisions
 
 
 [12]
 The district court records establish that the Master Contract utilized by the conversion agents was outdated because an amendment to the provisions had gone into effect on April 1, 1982