56 F.3d 72
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Marlene NEGRETTE, Plaintiff-Appellant,
v.
PRINCIPAL MUTUAL LIFE INSURANCE COMPANY; Chambers
Development Company, Incorporated, Defendants-Appellees.
 No. 94-55014.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 4, 1995.
Decided May 23, 1995.
 
 1
 Before: D.W. NELSON, CANBY Circuit Judges, and TANNER, District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Plaintiff-appellant Marlene Negrette appeals the district court's grant of summary judgment in favor of defendant-appellees Principal Mutual Life Insurance Company ("Principal Mutual") and Chambers Development Company, Inc. ("Chambers") in Negrette's action challenging the denial of her claim for medical benefits pursuant to section 502(a) of the Employee Retirement Insurance Security Act ("ERISA"), 29 U.S.C. Sec. 1132(a). The district court ruled that Negrette's claim for coverage was properly excluded under the preexisting condition provision in her group health insurance policy because the court found that on January 2, 1992, Negrette had received treatment for the symptoms of her then undiagnosed cancer. On appeal, Negrette claims that the district court erred in interpreting the preexisting condition clause of the insurance policy. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291, and we affirm.
 
 I.
 
 4
 The parties are familiar with the facts of the case; we will not recite them here. We review a grant of summary judgment de novo. Jesinger v. Nevada Federal Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). We must determine, viewing the evidence in the light most favorable to Negrette, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Id. This court may affirm a grant of summary judgment on any ground supported in the record. Iolab Corp. v. Seaboard Sur. Co., 15 F.3d 1500, 1504 (9th Cir. 1994).
 
 
 5
 Because Chambers and Principal Mutual have not alleged that the ERISA plan granted them discretionary authority to determine eligibility for benefits or to construe the terms of the plan, this court reviews their decision to deny Negrette's claim de novo. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Watkins v. Westinghouse Hanford Co., 12 F.3d 1517, 1524 (9th Cir. 1994).
 
 II.
 
 6
 We need not address whether Negrette's visit to Dr. Adatto on January 2, 1992 constituted "service or treatment" for her cancer. There is no dispute that Negrette was treated for her cancer on January 22-25, 1992. Because we find that Negrette's health coverage under the ERISA plan offered by Chambers did not begin until February 1, 1992, we conclude that her claim for coverage of her cancer treatment was properly excluded under the plan's preexisting condition clause.
 
 
 7
 It is undisputed that the Principal Mutual group policy that was in place when Negrette was hired by SBI establishes the existence of an ERISA employee welfare benefit plan, under which Negrette was a participant or beneficiary. See Kanne v. Connecticut General Life Ins. Co., 867 F.2d 489, 492 (9th Cir. 1988) (per curiam), cert. denied, 492 U.S. 906 (1989). Chambers and Principal Mutual contend that the unambiguous eligibility provision of that policy bars Negrette's assertion that her coverage began on January 12, 1992. See Greany v. Western Farm Bureau Life Ins. Co., 973 F.2d 812, 822 (9th Cir. 1992). Negrette asserts, however, that the Principal Mutual insurance policy was not the ERISA plan document and that there was no written plan applicable to Negrette when she began her employment with SBI. Thus, she argues, Ronald Kane's representations that her coverage would begin on January 12, 1992 estop Chambers from claiming that her coverage did not begin until February 1, 1992.
 
 
 8
 ERISA requires that "[e]very employee benefit plan ... be established and maintained pursuant to a written instrument." 29 U.S.C. Sec. 1102(a)(1). However, "there is no requirement that the documents claimed to collectively form the employee benefit plan be formally labelled as such. We see no reason to require an employer to comply with a formality not imposed by law." Horn v. Berdon, Inc. Defined Benefit Pension Plan, 938 F.2d 125, 127 (9th Cir. 1991). Accordingly, in Greany, we looked to the provisions of the group health insurance policy to determine whether the "written terms of the plan" were ambiguous. Greany, 973 F.2d at 820-22 & n.10; see also Qualls By and Through Qualls v. Blue Cross of California, Inc., 22 F.3d 839, 843 (9th Cir. 1993); Henkin v. Northrop Corp., 921 F.2d 864, 870 (9th Cir. 1990); accord Gable v. Sweetheart Cup Co., 35 F.3d 851, 855 (4th Cir. 1994), cert. denied, 1195 WL 61526 (U.S. Apr. 3, 1995); Musto v. American General Corp., 861 F.2d 897, 901 (6th Cir. 1988), cert. denied, 490 U.S. 1020 (1989).
 
 
 9
 The fact that Kane's promise to Negrette was made before she had received any written plan documents is not relevant. See Watkins v. Westinghouse Hanford Co., 12 F.3d 1517, 1523 (9th Cir. 1994); 29 U.S.C. Sec. 1024(b). The evidence is undisputed that Chambers cited the Principal Mutual group policy in the Form 5500 Chambers filed with the Secretary of Labor. See 29 U.S.C. Secs. 1023, 1024(a). Moreover,the summary plan description ("SPD") that Chambers provided to Negrette, pursuant to 29 U.S.C. Sec. 1024(b)(1)(A), explained that "The plan is established through a Group Policy issued by [Principal Mutual] for the Planholder, Chambers Development Company, Inc.," and that "[a]s a covered member of the plan, your rights and responsibilities are determined by the provisions of the Group Policy." Lastly, the eligibility provision included in the SPD booklet was completely consistent with that of the insurance policy. Thus, at the time of Negrette's hiring, the Principal Mutual group policy, applicable to nonunion workers scheduled to work at least 30 hours per week at SBI, constituted the written plan document.
 
 
 10
 Because the eligibility provision of that policy is unambiguous, Negrette cannot assert an equitable estoppel claim that "would result in a payment of benefits ... inconsistent with the written plan," Greany, 973 F.2d at 822. Thus, the effective date of her coverage was February 1, 1992. The undisputed fact that Negrette received "treatment or services" for her cancer on January 22-25, 1992 renders her cancer a preexisting condition even under her interpretation of the exclusionary provision.
 
 III.
 
 11
 Although the preexisting condition provision in the Principal Mutual policy probably would not bar coverage for Negrette's cancer because of her visit to Dr. Adatto on January 2, 1992,[1] we need not resolve this issue in this case. Because the effective date of her coverage was February 1, 1992, the "treatment or service" for cancer that she received on January 22-25, 1992 renders her cancer a preexisting condition under the plain language of the exclusionary provision. Accordingly, the judgment of the district court is
 
 
 12
 AFFIRMED.
 
 
 
 *
 Honorable Jack E. Tanner, Senior United States District Judge for the Western District of Washington, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 See Pitcher v. Principal Mutual Life Ins. Co., 870 F. Supp. 903 (S.D. Ind. 1994) (holding that the identical preexisting condition clause was ambiguous and must be construed against the insurer)