125 F.3d 1257
 21 Employee Benefits Cas. 1593, 97 Cal. Daily
Op. Serv. 7291,
97 Daily Journal D.A.R. 11,736,
Pens. Plan Guide (CCH) P 23937K
Paul L. SPINK, Plaintiff-Appellant,
v.
LOCKHEED CORPORATION, Daniel M. Tellep, Robert A. Furman,
Vincent N. Marafino, K.H. Anderson, L. Bernard, R.W. Berry,
P.N. Braun-Agel, D.L. Bronco, R.H. Northcutt, W.E.
Skowronski, A.G. Van Shaick, W.T. Vincent, Defendants-Appellees.
 No. 92-56094.
 United States Court of Appeals,
Ninth Circuit.
 Sept. 10, 1997.
 
 Theresa M. Traber, Bert Voorhees, Traber & Voorhees, Pasadena, California, for appellants.
 Gordon E. Krischer, David E. Gordon, Paul Borden, O'Melveny & Myers, Los Angeles, California, for appellees.
 On remand from the United States Supreme Court. D.C. No. CV-92-0800-SWV.
 Before: D.W. NELSON, REINHARDT, and BRUNETTI, Circuit Judges.
 BRUNETTI, Circuit Judge:
 
 
 1
 Paul Spink filed a five-count complaint on behalf of himself and similarly situated individuals against Lockheed Corporation and certain individual defendants (collectively "Lockheed"). Spink alleged that Lockheed's retirement plan violated the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 et seq., and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, et seq., as amended by the Omnibus Budget Reconciliation Act of 1986 (OBRA 1986), Pub.L. No. 99-509, 100 Stat. 1874 (1986). Counts I and II of the complaint alleged that the OBRA 1986 amendments to ERISA and ADEA entitled Spink and similarly situated employees to benefits under the Lockheed Corporation Retirement Plan for Certain Salaried Employees ("the Plan") calculated on the basis of periods worked both before and after the effective date of the statute. Count III alleged that amendments made by Lockheed to the Plan constituted a breach of fiduciary duty and a prohibited transaction under ERISA §§ 403, 404 & 406. Count V alleged that because Spink relied on representations made by Lockheed that he would receive benefits under the Plan, Lockheed was estopped from denying him benefits. Spink withdrew Count IV. Lockheed moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted and the district court granted Lockheed's motion and dismissed the complaint with prejudice.
 
 
 2
 Spink appealed the district court's dismissal of his claims. In an opinion issued on July 18, 1995, this court affirmed in part and reversed in part the district court's dismissal. Spink v. Lockheed, 60 F.3d 616 (9th Cir.1995). We held that the amendments to the Plan were unlawful under ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), which prohibits a fiduciary from causing a plan to engage in a transaction that transfers plan assets to a party in interest or involves the use of plan assets for the benefit of a party in interest and that the OBRA amendments applied retroactively, requiring Lockheed to include Spink's service years prior to 1988 in determining his benefits. Id. at 620 n. 1. Because our previous opinion concluded that OBRA 1986 required Lockheed to credit Spink for his pre-1988 service, we did not address Spink's claims under ERISA §§ 403, 404 and 405, or his claim of equitable estoppel. Id. at 622 nn. 4-5.
 
 
 3
 The Supreme Court granted a writ of certiorari and reversed. Lockheed Corp. v. Spink, 517 U.S. 882, ----, 116 S.Ct. 1783, 1788, 135 L.Ed.2d 153 (1996). The Supreme Court held that the OBRA 1986 amendments did not prohibit Lockheed from excluding Spink's pre-1988 years of service when calculating accrued benefits under an ERISA plan and concluded that Lockheed's actions were not prohibited by § 406(a)(1)(D) of ERISA. Id. The Court did not address whether Spink could state a cause of action under ERISA §§ 403, 404 or 405 or under equitable estoppel principles.
 
 
 4
 We address these remaining claims on remand.
 
 I. Facts and Previous Proceedings
 
 5
 Spink was employed by Lockheed Corporation from 1939 until 1950. Prior to rejoining Lockheed, Spink worked for Hughes Helicopters, where he expected to receive pension benefits if he continued to work through October 31, 1982. In 1979, Lockheed persuaded Spink to return. Spink was 61 years old when he resumed employment with Lockheed. In an effort to recruit Spink from Hughes, Lockheed represented that if he accepted its offer of employment, Spink would participate in the Lockheed Retirement Plan for Certain Salaried Employees ("the Plan") and would accrue credited service toward retirement benefits under the Plan during his subsequent employment with Lockheed. Lockheed personnel provided him with documents describing the benefits to which he would be entitled, and for the next four years sent him written year-end statements from the Plan notifying him of the amount of credited service he had accumulated as a Plan participant. Sometime in 1984, Lockheed notified Spink that he was not eligible to participate in the Plan because he was over sixty when hired. At that time, the terms of the Plan excluded from participation employees who were over the age of 60 when hired. This was expressly permitted by ERISA. 29 U.S.C. § 1052(a)(2)(B).
 
 
 6
 In 1986, Congress passed OBRA 1986. OBRA 1986 amended ERISA, ADEA, and the Internal Revenue Code (IRC), 26 U.S.C. §§ 1 et seq., to bar age-based discrimination in participation and benefit accrual standards applied by employee benefit plans. The statute now flatly mandates that "[n]o pension plan may exclude from participation (on the basis of age) employees who have attained a specified age." 29 U.S.C. § 1052(a)(2). As a consequence of these amendments, for plan years beginning after January 1, 1988, the effective date of the amendments, Lockheed was required to allow employees hired after age sixty to participate in the Plan. Spink became a participant on December 25, 1988 (the first day of the Plan's 1988 plan year). In 1989, Lockheed informed him that it did not intend to credit him with accrued benefits based on his years of service with Lockheed prior to December 25, 1988. The Plan specifies that an employee who was previously excluded from the Plan would "not receive Credited Service for his pre-Member service[ ]" under the terms of the Plan. Plan § 2.01(C).
 
 
 7
 On May 8, 1990, Lockheed amended the Plan, establishing a "1990 Special Retirement Opportunity" (SRO) and a "1990 Voluntary Retirement Program" (VRP), which were available to certain employees until June 30, 1990 (collectively the "1990 Plan amendments"). These programs offered increased retirement benefits to eligible employees as an incentive to terminate their employment. The increased benefits were paid out of the Plan's surplus assets. To partake in the increased pension benefits, Lockheed required employees to release all potential employment-related claims they might have against Lockheed. Spink retired in June 1990. Although he was eligible for the SRO option, Spink did not elect it because he did not wish to waive any ADEA and ERISA claims he may have against Lockheed.
 
 
 8
 Spink alleges that Lockheed and the members of the board of directors violated ERISA's duty of care and prohibited transaction provisions, 29 U.S.C. §§ 1103(c)(1), 1104(a), 1105, by amending the Plan to create the retirement programs. Further, Spink alleged that Lockheed was estopped from denying him benefits for his pre-1988 service based upon the doctrine of equitable estoppel. Because these claims were not addressed on appeal before this court or the Supreme Court, we address them on remand.
 
 II. Standard of Review
 
 9
 We review de novo a grant of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). Carpenters Health & Welfare Trust Fund v. Tri Capital Corp., 25 F.3d 849, 852 (9th Cir.1994). In addition, "[t]he interpretation of ERISA, a federal statute, is a question of law subject to de novo review." Spain v. Aetna Life Ins. Co., 13 F.3d 310, 312 (9th Cir.1993).
 
 III. ERISA § 403
 
 10
 Spink contends that Lockheed's Plan amendments violated section 403(c)(1)'s admonition that "the assets of the plan shall never inure to the benefit of any employer and shall be held for the exclusive purpose of providing benefits to participants in the plan and their beneficiaries." ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1). We affirm the district court's dismissal of Spink's cause of action under ERISA § 403(c)(1).
 
 
 11
 In Spink, the Supreme Court analogized the benefit received by Lockheed through the Plan amendments to other "incidental benefits" which an employer permissibly receives under ERISA. The Court stated that:
 
 
 12
 Spink concedes ... that among the "incidental" and thus legitimate benefits that a plan sponsor may receive from the operation of a pension plan are attracting and retaining employees, paying deferred compensation, settling or avoiding strikes, providing increased compensation without increasing wages, increasing employee turnover, and reducing the likelihood of lawsuits by encouraging employees who would otherwise have been laid off to depart voluntarily.... We do not see how obtaining waivers of employment-related claims can meaningfully be distinguished from these admittedly permissible objectives.
 
 
 13
 517 U.S. at ----, 116 S.Ct. at 1791. The Supreme Court overruled our previous decision, in part, because it determined that Lockheed's use of plan assets to purchase waivers for Lockheed's liability did not constitute the type of "transaction" that was "potentially harmful to the plan." Spink, 517 U.S. at ---- - ----, 116 S.Ct. at 1790-91. Thus, any benefit received by Lockheed through the amendment of the Plan was permissible under ERISA and may not form the basis of a cause of action under § 403(c)(1).
 
 
 14
 Indeed, this conclusion is consistent with opinions from other circuits that have held that an employer does not receive "inurement" under § 403 where plan assets were paid only to plan participants and the plan only advances the employer's business interests. See Aldridge v. Lily-Tulip, Inc., 953 F.2d 587, 592 n. 6 (11th Cir.1992); Fletcher v. Kroger Co., 942 F.2d 1137, 1140 (7th Cir.1991); Hlinka v. Bethlehem Steel Corp., 863 F.2d 279, 283 (3rd Cir.1988). Lockheed's Plan was a noncontributory pension plan consisting solely of employer contributions. An employer has discretion to decide how to use an asset surplus attributable solely to employer contributions. See Jacobson, et al. v. Hughes Aircraft Co., 105 F.3d 1288, 1294 (9th Cir.1997). Lockheed did not violate ERISA § 403's anti-inurement provision.
 
 IV. ERISA §§ 404 & 405
 
 15
 In its complaint, Spink argued that Lockheed's Plan amendments constituted a breach of Lockheed's fiduciary duty prohibited by ERISA § 404(a)(1)(A)(i), 29 U.S.C. § 1104(a)(1)(A)(i). ERISA section 404 provides that:
 
 
 16
 "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and -
 
 
 17
 (A) for the exclusive purpose of:
 
 
 18
 (i) providing benefits to participants and their beneficiaries...."
 
 
 19
 29 U.S.C. § 1104(a)(1)(A)(i) (emphasis added). Thus, Spink cannot state a cause of action under ERISA § 404 unless Lockheed was acting as a fiduciary. In Spink, the Supreme Court held explicitly that Lockheed was not acting in a fiduciary capacity in amending the plan. The Court stated that "Lockheed acted not as a fiduciary but as a settlor when it amended the terms of the Plan to include the retirement programs." 517 U.S. at ----, 116 S.Ct. at 1790.[1]
 
 
 20
 Similarly, Spink may not state a cause of action under ERISA § 405 unless Lockheed was acting as a fiduciary. ERISA § 405, 29 U.S.C. § 1105. Further, because Spink did not raise the argument that Lockheed's actions violated § 405 in his briefs to this court, but only before the district court, he waived that argument.
 
 V. Equitable Estoppel
 
 21
 Finally, Spink contends that Lockheed is equitably estopped from denying him benefits based upon representations Lockheed made regarding his entitlement to those benefits. Spink argues that he is entitled to full benefits under the Plan based upon his reliance on Lockheed's oral promises that he would become a participant in the Plan and on the plan administrator's written representations that he became a member of the Plan upon his hire in 1979 and accrued plan benefits for the years 1980 through 1983. The district court dismissed Spink's equitable estoppel claim on the ground that recovery for equitable estoppel is not permitted under ERISA. However, this circuit has held that such recovery is permitted under the federal common law claim of equitable estoppel, rather than under ERISA. See Greany v. Western Farm Bureau Life Ins. Co., 973 F.2d 812, 821-22 (9th Cir.1992).
 
 
 22
 Because the district court dismissed Spink's complaint on a 12(b)(6) motion, we must determine whether it appears beyond a doubt that Spink can prove no set of facts in support of his equitable estoppel claim which would entitle him to relief. Parks School of Business, Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir.1995). In order to state a cause of action for equitable estoppel in an ERISA action, Spink must allege a material misrepresentation, reasonable and detrimental reliance upon the representation, extraordinary circumstances, that the provisions of the plan at issue were ambiguous such that reasonable persons could disagree as to their meaning or effect, and finally, that representations were made involving an oral interpretation of the plan. Pisciotta v. Teledyne Indus., Inc., 91 F.3d 1326, 1331 (9th Cir.1996). Spink alleges sufficient facts in support of each of these requirements for the years of 1979 through 1983.
 
 
 23
 Specifically, Count V of Spink's complaint alleges that:
 
 
 24
 Prior to the time he returned to Lockheed in 1979, Spink was employed by Hughes Helicopters, and he is informed and believes that he was due to receive pension benefits from Hughes so long as he continued working for the company through at least October 31, 1982. In offering to employ Spink in 1979, Lockheed, through its authorized agent or employee, represented to Spink that if he accepted employment with Lockheed, Spink would be a participant in the Plan and would accrue credited service toward retirement benefits under the Plan during his subsequent employment with Lockheed. In reliance upon this representation, Spink left his employment with Hughes to work for Lockheed, thereby relinquishing his membership in Hughes's retirement plan.
 
 
 25
 "At or about the time of Spink's return to Lockheed in 1979, and continuing through approximately 1983, Lockheed made representations to Spink that he was and would continue to be during his employment with Lockheed a participant in the Plan, and that he was accruing and would continue to accrue credited service toward retirement benefits under the Plan."
 
 
 26
 Complaint at pp 72-73. These allegations are sufficient to state a claim that Spink was induced to accept Lockheed's offer of employment by Lockheed's representations that Spink would receive benefits under the Plan, and that he continued to work for Lockheed as a result of its representations.
 
 
 27
 In fact, the only equitable estoppel factor that Lockheed contests at this stage is whether the Plan was ambiguous. One term of the Plan prohibits Spink's receipt of such benefits. Section 2.01(C) of the Plan states that:
 
 
 28
 Notwithstanding any other provision of the Plan to the contrary, no Employee may become a Member if he commences employment on or after December 25, 1976, and, at the time of such commencement of employment, is sixty (60) years of age or older....
 
 Section 4.06 of the Plan provides that:
 
 29
 "Each Member shall be informed by the Retirement Plan Committee in writing of his Credited Service consisting of Past Service based on Corporation records of employment and thereafter once each year the Retirement Plan Committee shall notify each Member in writing of his total Credited Service, according to the Corporation's records. Such Credited Service shall be considered correct and final unless the Member files an objection by Filing With the Committee within thirty (30) calendared days following such notice."
 
 
 30
 Section 4.06 (emphasis added).
 
 
 31
 The Plan is ambiguous as applied to Spink because reasonable persons could disagree as to the effect of Section 2.01 when it interacts with the annual statements received by Spink until 1983 which are deemed "correct and final" under Section 4.06. Spink received annual notices from 1980 through 1982 indicating that he had accrued credited service time during the course of his employment up to that time and he did not file an objection to those statements. Section 4.6 requires that those statements be considered "correct and final," yet section 2.01 indicates that they cannot be "correct and final" because Spink was over the age of sixty at the time they were issued. Reasonable persons could disagree as to the effect of these provisions, and therefore of the Plan, on Spink's ability to obtain retirement benefits under the Plan. "[T]he provisions of the plan at issue are ambiguous [where] reasonable persons could disagree as to their meaning or effect...." Greany, 973 F.2d at 821, adopting Kane v. Aetna Life Ins., 893 F.2d 1283, 1286-87 (11th Cir.1990).
 
 
 32
 Lockheed argues that there is no ambiguity in the Plan because Spink received a benefit statement in 1983 which reflected "no retirement service," and Spink did not object to that statement as required by the Plan. Lockheed is correct that there is no ambiguity in the Plan with regard to the 1983 statement and all subsequent statements that indicated "no retirement service" and to which Spink did not object. Because those statements indicate "no retirement service" and must be considered "correct and final," they do not conflict with section 2.01 and therefore do not create an ambiguity in the Plan. Pisciotta, 91 F.3d at 1331 (in order to state a claim for equitable estoppel, "the provisions of the plan at issue must be ambiguous"). Because Spink has failed to allege such an ambiguity after 1983, he has failed to state a claim of equitable estoppel for 1983 and for the years following that statement in which Spink failed to challenge those statements which indicated "no retirement service." However, this conclusion does not alter the fact that an ambiguity existed from 1979 until 1982 when Spink received statements, which the Plan required him to interpret as "correct and final," indicating that he was receiving retirement benefits for those years. Accordingly, his complaint survives the 12(b)(6) motion to that extent.
 
 
 33
 The equitable estoppel doctrine is founded upon a party's reasonable reliance on an interpretation of ambiguous Plan provisions. Because Spink alleged sufficient facts in support of his claim, the district court erred in dismissing his claim.
 
 
 34
 AFFIRMED in part, REVERSED in part and REMANDED.
 
 
 
 [1]
 In his petition for rehearing, Spink argues that Lockheed was nonetheless acting as a fiduciary because "Lockheed's intervention in the administration of the amended plan clearly implicates Lockheed's authority and responsibilities as a named fiduciary under the plan." This argument ignores the fact that the Supreme Court was aware of Lockheed's involvement in the administration of the Plan and nonetheless concluded that Lockheed was not acting as a fiduciary