**KAISER PERMANENTE EMPLOYEES PENSION PLAN, Plaintiff,**

v.

**Diane BERTOZZI, individually and as Trustee of the Murber L. Hodge Trust, and Walter Hodge, Defendants.**

**And Related Actions.**

**No. C 93–3205 WHO.**

United States District Court, N.D. California.

March 24, 1994.

---

Gary T. Lafayette, C. Mark Humbert, McGee Willis & Greene, San Francisco, CA, for plaintiff and counter defendant Kaiser Permanente Employees Pension Plan and counter defendant Kaiser Foundation Health Plan Inc., as administrator of the Kaiser Permanente Employees Pension Plan.

Lucia C. Savage, Janet E. Brown, Sigman & Lewis, Oakland, CA, for defendant and counter claimant Diane Bertozzi, individually and as trustee of the Murber L. Hodge Trust.

## MEMORANDUM DECISION AND ORDER

ORRICK, District Judge.

Plaintiff and counterdefendant Kaiser Permanente Employees Pension Plan has moved for summary judgment against defendant and counterplaintiff Dianne Bertozzi. For the reasons stated hereinafter, as well as for the reasons stated at the hearing on February 24, 1994, the motion for summary judgment is denied.

### I.

This is an action for declaratory relief brought by plaintiff and counterdefendant Kaiser Permanente Employees Pension Plan ("Plan"). The Plan is an employee pension benefit plan as defined under ERISA. Counterdefendant Kaiser Foundation Health Plan, Inc. ("Kaiser") serves as the administrator of the Plan. In its complaint, the Plan alleges that it is faced with two competing and mutually exclusive claims for the same retirement benefit and seeks the Court's guidance as to what its obligations are.

The case arises as a result of the death of one of the Plan's participants, Mrs. Murber Hodge on February 26, 1992. Mrs. Hodge was a thirty-five year employee of Kaiser Hospital, who worked as an obstetric technician in Oakland, California. During 1991,

Mrs. Hodge became ill, and was placed on sick leave. Her illness persisted and she died without ever returning to work.

At the time of her death, Mrs. Hodge was a noncontributory member of the Plan, i.e. her employer contributed to her retirement fund, but she did not. Under the Plan, a vested participant electing to retire may choose from among various pension payment options, including certain annuity arrangements or a single sum distribution.

The Plan provides, consistent with ERISA regulations, that any single sum distribution election or election to waive spousal entitlement to an annuity must be (1) in writing; (2) signed by the employee's spouse with an acknowledgement of the consequences of the waiver; and (3) notarized. [Plan Section D–2; Decl. of Ellen Canter, filed Jan. 27, 1994, Ex. A at D–2.] The Plan also provides that "[i]f no election is made or if the required spousal consent is not obtained . . . a married Participant is paid under the Joint and Survivor Annuity method with a 50% continuation to the survivor and with the Participant's spouse as Joint Annuitant." [Plan Section D–2; Canter Decl., Ex. A at D–2.] Finally, the Plan provides that if a vested participant dies prior to retirement, that participant's surviving spouse is entitled to a "Survivor Annuity" or, if the requirements for a Survivor Annuity are not met, "no benefits are payable under the Plan." [Plan Section D–3(a); Canter Decl., Ex. A at D–4.] This is the extent of the facts to which the two sides agree.

According to Bertozzi, in the weeks prior to her mother's death, Kaiser refused to provide both her and Mrs. Hodge with the forms necessary for her to complete her retirement application and to elect a lump sum award of her pension. Bertozzi claims that she and her mother placed several calls to the personnel office at Kaiser and requested that they mail Mrs. Hodge the forms necessary for retirement. According to Bertozzi, each request was refused and they were both told that, despite her illness, Mrs. Hodge would have to come in and pick up the forms in person.

On February 18, 1992, Mrs. Hodge allegedly wrote a letter to Kaiser Hospital ("election letter"). In it, she stated that the personnel office had refused to send her her retirement forms, that she was providing notice of her retirement, and that she was electing to collect her pension in one lump sum. The election letter was signed by Mrs. Hodge, her husband Walter Hodge, a co-defendant in this case, Bertozzi and DeMildred Brooks, a family friend. It was not notarized and although Mr. Hodge signed it, he did not explicitly acknowledge the consequences of his waiver of the spousal annuity to which he was otherwise entitled. Both sides agree that the election letter does not meet the Plan's requirements for an effective election and waiver. Despite this, Bertozzi claims that she is entitled to a single sum benefit under the Plan, by way of an *inter vivos* trust entitled the Murber L. Hodge Trust, under which Bertozzi is the alleged trustee and sole beneficiary.

Bertozzi states that she placed the election letter in an envelope, along with a form entitled "Request for Estimate," and sent it to Kaiser personnel. Kaiser received the form on February 25, 1992, but claims it did not receive the accompanying letter.

After her mother's death on February 26, 1992, Bertozzi dealt with Kaiser personnel on a regular basis regarding life insurance benefits, her mother's final paycheck, and the processing of her medical bills. She claims that during her conversations with these individuals, she mentioned her mother's election letter and inquired about the status of her mother's pension.

On April 1, 1992, Susan Tomczak of Kaiser's Regional Employee Benefits office sent Bertozzi the proceeds of Mrs. Hodge's life insurance. After receiving the proceeds, Bertozzi called Tomczak to inquire about the election letter and her mother's retirement benefits. She told Tomczak that her mother was married to Walter Hodge at the time of her death. Tomczak allegedly took down the information about Mr. Hodge and several days later sent information to him regarding his possible eligibility for a spousal annuity.

Concerned that Kaiser had either not received or was not intending to honor Mrs. Hodge's election letter, Bertozzi claims to have sent letters to Kaiser on May 29 and August 25, 1992, enclosing a copy of the

election letter each time. Kaiser denies receiving these letters. Several Kaiser employees have filed declarations stating they never saw the letters and they are not in the relevant files.

Finally on November 9, 1992, Bertozzi sent another letter, along with a copy of the election letter via certified mail to Ellen Canter, the retirement administrator. Kaiser admits that it received this letter. In response to it, Ms. Canter wrote to Bertozzi and enclosed a set of forms for Mr. Hodge to fill out so that he could begin receiving his spousal annuity. Canter's letter did not mention the election letter.

For its part, Kaiser maintains that it never received Mrs. Hodge's election letter until November 1992.[1] Kaiser further maintains that at the time of her death, it had no records indicating that Mrs. Hodge had elected to retire or that she wished to receive a single sum pension benefit. In addition, and according to plan records, Mrs. Hodge was not married at the time of her death.

Based on a subsequent investigation, Kaiser concluded that Mrs. Hodge was married to Walter Hodge sometime prior to the commencement of her employment with Kaiser. The couple then separated and she filed a complaint for divorce. It appears, however, that no judgment of divorce was ever issued. On this basis, Kaiser does not dispute that Walter Hodge was Murber Hodge's legal spouse at the time of her death.

As a result of the competing and mutually exclusive claims of Bertozzi and Walter Hodge to Murber Hodge's entitlement benefit, and because of the suspicious nature of the election letter, Kaiser filed this action for declaratory relief naming both Bertozzi and Hodge as defendants. Mr. Hodge has never filed an appearance in the case and default has been entered against him by the Clerk of the Court. He has previously executed an affidavit stating that he has no interest in receiving the retirement benefits at issue. [Decl. of Lucia Savage, filed Feb. 10, 1994, Ex. 8.]

Bertozzi filed two counterclaims seeking (1) benefits under the plan and (2) penalties against Kaiser for failure to respond to her mother's Request for Estimate form, as provided by 29 U.S.C. § 1132(c). Kaiser maintains that it is entitled to judgment against Bertozzi as a matter of law because the February 18, 1992 letter does not constitute a valid election of a single sum benefit and because her request for penalties is without merit.

## II.

### A.

#### Applicable Standards

Rule 56 of the Federal Rules of Civil Procedure provides that a court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

The Supreme Court's 1986 "trilogy" of *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), requires that a party seeking summary judgment identify evidence that shows the absence of a genuine issue of material fact. Once the moving party has made this showing, the non-moving party must "designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(c)). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical

---

1. In addition, although Kaiser does not base its motion on the grounds that the letter is fraudulent and assumes for the purposes of the motion that Mr. Hodge signed the letter prior to Mrs. Hodge's death, Kaiser argues that its investigation into Bertozzi's claim raises serious questions regarding the authenticity of the election letter. For example, Kaiser notes that during his deposition, Mr. Hodge could not remember signing it, although he has filed a declaration on Bertozzi's behalf attesting that he now remembers doing so. In addition, Kaiser has submitted excerpts of the deposition of DeMildred Brooks, one of the witnesses who signed the election letter, in which she claims that she did not sign it until several months after Mrs. Hodge's death and backdated the signature at the urging of Bertozzi.

doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby,* 477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted).

### B.

#### *Enforceability of the Election Letter*

■ There can be no dispute that Mrs. Hodge's election letter does not meet the strictures of the plan because the Plan requires that for an election of a single sum benefit to be valid, a married participant's spouse must execute (1) a notarized waiver that (2) acknowledges the effects of such waiver. [Plan Section D–2; Canter Decl., Ex. A at D–1.] ERISA mandates these two requirements. 29 U.S.C. § 1055(c)(2)(A). In addition, it is a fundamental principle of ERISA that the written terms of a plan control, and that, in the absence of discretion granted to a plan fiduciary to interpret a plan provision, a plan fiduciary has no power to act at variance from the terms of the plan. 29 U.S.C. § 1104(a).

Because Bertozzi predicates her claim for a single sum benefit entirely upon the validity of the election letter, her claim must fail unless she can convince the Court that there is good reason to enforce it despite its deficiencies. Toward this end, she puts forth three theories. First, she maintains that Kaiser should be estopped from arguing that the election letter is invalid because it failed to provide Mrs. Hodge with the forms she requested that would have provided more explicit instructions regarding the requisite form of an election letter. Second, she argues that because the election letter meets the less explicit requirements of the plan summary, as opposed to the actual terms of the Plan, and substantially complies with the more rigorous requirements of the Plan, the letter should be enforced. Finally, she maintains that Kaiser breached its fiduciary duty by failing to provide Mrs. Hodge with the requested forms and she should be awarded the lump sum benefit to remedy this breach. Each of these theories is discussed in turn below.

#### 1. *The Estoppel Theory*

■ Bertozzi first argues that Kaiser should be estopped from asserting the invalidity of the letter because unidentified agents of Kaiser told both Bertozzi and her mother that Mrs. Hodge would have to appear personally at the Kaiser office to obtain the retirement forms she was seeking. Bertozzi maintains that Kaiser made this demand even though it knew that her mother was too sick to travel and the plan documents do not require such a personal appearance.

■ Although the Ninth Circuit has recognized that in certain circumstances equitable estoppel can be applied to a claim under ERISA, its availability is severely restricted. In *Greany v. Western Farm Bureau Life Ins. Co.,* 973 F.2d 812 (9th Cir.1992), the Ninth Circuit adopted the Eleventh Circuit's test for estoppel holding that:

> a federal common law claim of equitable estoppel will be available [in an ERISA action] only where '(a) the provisions of the plan at issue are ambiguous such that reasonable persons could disagree as to their meaning or effect, and (b) representations are made to the employee involving an oral interpretation of the plan.'

*Id.* at 821 (quoting *Alday v. Container Corp.,* 906 F.2d 660, 666 (11th Cir.1990)) (other citations omitted); *see also Watkins v. Westinghouse Hanford Co.,* 12 F.3d 1517, 1527–28 (9th Cir.1993) (affirming limits on estoppel theory). In addition, the court held that estoppel can never be allowed "where [the resulting] payment would conflict with the written agreement." *Greany,* 973 F.2d at 822.

Bertozzi meets neither of the two prerequisites for equitable estoppel. First, she does not allege that the terms of the plan requiring a notarized election letter containing an explicit waiver by the spouse are ambiguous. In addition, she has made no claim that Kaiser made an oral representation to her or her mother regarding allegedly ambiguous terms of the plan. Rather, her claim is that Kaiser representatives told Mrs. Hodge that she would have to appear in person to obtain her retirement forms. This does not amount to an oral interpretation of

the controverted terms of the plan. *See id.* ("A mistake in referring to an outdated form to determine eligibility does not rise to the level of an interpretation of the plan's provisions justifying application of the equitable estoppel doctrine.").

Accordingly, Bertozzi's claim based on equitable estoppel must fail.

### 2. Compliance with the Plan Summary Theory

■ Bertozzi next argues that because the election letter meets the requirements of the summary plan description ("SPD") that Kaiser distributes to its employees, the letter should be enforced despite its failure to meet the technical requirements identified in the Plan itself. In this instance, the SPD provides that "[i]f you choose an option other than this Joint and Survivor Annuity, your spouse must consent to your election." [Canter Decl., Ex. B at 20.]

Under ERISA, all participants in an employee benefit plan must be provided with a SPD that is "written in a manner calculated to be understood by the average plan participant." 29 U.S.C. § 1022(a)(1). The SPD must be "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." *Id.* More importantly, the SPD must contain a description of the "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(b). "The focus of concern [of section 1022] is with circumstances that might cause a participant or beneficiary not to receive benefits." *Pompano v. Michael Schiavone & Sons, Inc.,* 680 F.2d 911, 914 (2d Cir.1982), *cert. denied,* 459 U.S. 1039, 103 S.Ct. 454, 74 L.Ed.2d 607 (1982).

■ Case law provides that where the terms of the SPD and the plan conflict, the terms of the SPD govern a claim for benefits. *See, e.g., Hansen v. Continental Ins. Co.,* 940 F.2d 971 (5th Cir.1991) (cited with approval in *Price v. Provident Life & Acc. Ins. Co.,* 2 F.3d 986, 988 n. 1 (9th Cir.1993)); *Edwards v. State Farm Mut.,* 851 F.2d 134 (6th Cir.

1988); *Ruotolo v. Sherwin Williams Co.,* 622 F.Supp. 546 (D.Conn.1985).

The circuits have split, however, regarding whether an employee seeking to enforce the terms of an SPD must first establish that he or she detrimentally relied on those terms. *Compare Branch v. G. Bernd Co.,* 955 F.2d 1574, 1579 (11th Cir.1992) (reliance on SPD required) *and Senkier v. Hartford Life & Accident Ins. Co.,* 948 F.2d 1050, 1051 (7th Cir.1991) (same) *and Bachelder v. Communications Satellite Corp.,* 837 F.2d 519, 522–23 (1st Cir.1988) (same) *with Hansen v. Continental Ins. Co.,* 940 F.2d 971, 982 (5th Cir.1991) (no need to establish reliance) *and Edwards v. State Farm Mut. Auto. Ins. Co.,* 851 F.2d 134, 136–37 (6th Cir.1988) (same). The Ninth Circuit has not yet decided this issue. *Long v. Flying Tiger Line, Inc.,* 994 F.2d 692 (9th Cir.1993).

■ The Court finds persuasive the reasoning of the First, Seventh and Eleventh Circuits and concludes that an employee who wishes to enforce the terms of an SPD, in lieu of conflicting terms contained in the actual plan, must first prove that he or she reasonably relied on those terms. Enforcement of the terms of an SPD in the absence of a showing of reliance would amount to holding the plan administrator strictly liable for the deficiencies in its SPD. The Court cannot countenance such strong medicine. In addition, the Court concludes that the holdings in *Hansen* and *Edwards* allowing recovery in the absence of reliance can properly be classified as dicta because, in both cases, the courts ultimately found that the employees in question had actually relied on the SPD. *Hansen,* 940 F.2d at 983; *Edwards,* 851 F.2d at 137.

Kaiser maintains that this theory of recovery is not available to Bertozzi because (1) the SPD of the plan does not conflict with the language of the Plan itself; and (2) Bertozzi has not adequately alleged that her mother relied on the SPD when executing her election letter. Both arguments fail.

■ First, a review of the SPD reveals that it lacks important details. Most notably, although it informs the participant that she needs to obtain her spouse's consent, it does

not mention that the consent must be notarized and that the spouse must explicitly acknowledge the effect of his or her waiver. These details are contained only in the language of the Plan itself. Yet, Kaiser is attempting to use these same two requirements as the basis for denying Bertozzi's claim for her mother's pension benefits.[2]

■ Second, Kaiser argues that Bertozzi has put forth no evidence that her mother actually relied on the SPD when she executed the election letter. Although Kaiser correctly asserts that Bertozzi has not put forth much evidence to support her reliance theory, it is sufficient to preclude summary judgment at this juncture. The election letter contains an affirmative request for payment of a lump sum benefit in lieu of the default annuity. In addition, it is signed by Mrs. Hodge's husband and two other witnesses. From the contents of the election letter, the Court can reasonably infer that Mrs. Hodge was aware that specific measures had to be taken to elect a lump sum payment and that she may have relied on the SPD Kaiser provides to each of its employees to guide her through the appropriate steps. Although these inferences are sufficient to preclude summary judgment at this juncture, at trial, Bertozzi will bear the burden of establishing that her mother reasonably relied on the terms of the SPD when she executed the election letter. *See, e.g., Ruotolo,* 622 F.Supp. at 550 (Fact that plaintiff stated in

an affidavit that he "glanced" at the SPD was sufficient to preclude summary judgment.).

### 3. *Breach of Fiduciary Duty Theory*

■ Finally, Bertozzi argues that Kaiser breached its fiduciary duty by failing to mail Mrs. Hodge the retirement information that she requested and that to remedy this breach, the Court should award her the lump sum retirement benefit. It is indisputable that plan administrators have a fiduciary duty to "give complete and accurate information in response to a participant's questions." *Drennan v. General Motors Corp.,* 977 F.2d 246, 251 (6th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 2416, 124 L.Ed.2d 639 (1993). Despite this duty, Bertozzi's claim that she is entitled to an award of benefits is precluded by Supreme Court and Ninth Circuit precedent in this area.[3]

The primary remedial provisions of ERISA can be found in section 1132, which details the causes of action that may be maintained by plan participants and those that may only be maintained by the Secretary of Labor. The first provision, a claim for benefits under section 1132(a)(1), allows plan participants and beneficiaries "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). Under this provision, a court must determine whether the participant or beneficiary is entitled to benefits based upon his or her compliance with the terms of the plan. Because both sides agree that Mrs. Hodge's election letter

**2.** In addition, Kaiser maintains that because its SPD satisfies the requirements of the C.F.R. pertaining to it, Bertozzi is precluded from arguing that it conflicts with the Plan. This argument lacks merit. The C.F.R. at issue provides that "[i]n the case of an employee pension benefit plan, [the summary must include] a statement describing any joint and survivor benefits provided under the plan, including any requirement that an election be made as a condition to select or reject the joint and survivor annuity . . ." 29 C.F.R. § 2520.102–3(k). Kaiser maintains it has satisfied this regulation because its SPD informs the participant that a consent must be executed. Nevertheless, as noted above, the SPD does not fully inform the participant of all of the requirements of the consent and, consequently, it is inadequate.

**3.** In addition, the Court notes that the only evidence that Bertozzi has to establish that Kaiser refused to mail the forms is hearsay. First, Ber-

tozzi maintains that she called Kaiser on her mother's behalf, but was told that her mother would have to come in personally to pick up the forms. For the purposes of this motion, the Court treats these statements by the unidentified Kaiser personnel officer as a party admission. Next, Bertozzi maintains that her mother told her that she was also told she would have to go to Kaiser to pick up the forms. This evidence constitutes multiple hearsay. Once again, however, for the purposes of this motion, the Court treats the first level of hearsay as a party admission and admits Mrs. Hodge's repetition of the statements to Bertozzi under the catch-all exception to Rule 804 of the Federal Rules of Evidence. F.R.E. 804(b)(5). The Court similarly treats the declaration testimony of Joan Lee, a nurse who states that Mrs. Hodge told her that Kaiser refused to mail her the forms she had requested.

does not satisfy the Plan's requirements, this avenue of relief is closed to Bertozzi.

Next, section 1132(a)(2) provides that a participant may bring an action to obtain "appropriate relief under section 1109...." 29 U.S.C. § 1132(a)(2). Recovery under section 1109, however, has been strictly construed and must run to the benefit of the plan as a whole, rather than to an individual participant or beneficiary. *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144, 105 S.Ct. 3085, 3091, 87 L.Ed.2d 96 (1985). Because Bertozzi seeks to recover an individual award of benefits, relief under section 1132(a)(2) is also precluded.

Finally, section 1132(a)(3) provides:

(3) [an action may be brought] by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

Bertozzi maintains that because section 1132(a)(3) provides for the crafting of "other appropriate equitable relief," the Court can award her mother's lump sum pension benefit to remedy Kaiser's breach of its fiduciary duty. Unfortunately for Bertozzi, recent Supreme Court and Ninth Circuit precedent in this area precludes such an award.

The Supreme Court has recently held that section 1132(a)(3) does not permit an award of compensatory damages against nonfiduciaries to remedy a breach of fiduciary duty. *Mertens v. Hewitt Assoc.*, — U.S. —, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). The Court specifically examined the nature of the award sought—compensatory damages—and determined that the strict textual language of section 1132(a)(3) allowing for "equitable relief" precluded such an award. Rather, the Court concluded that the language limited remedies under the section to traditional equitable remedies, such as injunction and restitution. *Id.* at — — —, —, 113 S.Ct. at 2067–68, 2072, 124 L.Ed.2d at 169, 174. Similarly, the Ninth Circuit has also held that extra-contractual damages, such as damages for emotional distress, are not available

under section 1132(a)(3), *Sokol v. Bernstein*, 803 F.2d 532 (9th Cir.1986).

Bertozzi correctly notes that several circuits have recognized that section 1132(a)(3) provides for an individual cause of action for breach of a fiduciary duty and authorizes an award of monetary damages to redress the breach. *See, e.g., Bixler v. Central Penn. Teamsters Health & Welfare Fund*, 12 F.3d 1292 (3rd Cir.1993); *Warren v. Society Nat'l Bank*, 905 F.2d 975 (6th Cir.1990), *cert. denied*, 500 U.S. 952, 111 S.Ct. 2256, 114 L.Ed.2d 709 (1991); *Eddy v. Colonial Life Ins. Co. of Am.*, 919 F.2d 747 (D.C.Cir.1990). *Bixler*, however, does not even mention *Mertens*, even though the Supreme Court issued the opinion six months before the Sixth Circuit decided it. In addition, the other cases on which the Sixth Circuit relied for support in *Bixler*, including *Warren* and *Eddy*, were all decided pre-*Mertens*. Consequently, their continuing viability is questionable.

In addition, even if the Court were to characterize the award of damages that Bertozzi seeks as contractual as opposed to extracontractual and thereby distinguishable from the type of damages sought in *Mertens*, she would still be unable to recover under section 1132(a)(3). In *Sokol*, the Ninth Circuit's decision rested only in part on the fact that the claimant was seeking extracontractual damages. Of equal importance to the court was who was seeking the award. For example, the Court emphasized that the restrictions on who may recover under section 1132(a)(2) apply with equal force to section 1132(a)(3) in light of ERISA's legislative history, noting:

[t]he legislative history of ERISA supports the proposition that the entire statute was aimed at the protection of the integrity of pension plans, rather than at the protection of beneficiaries.

*Sokol*, 803 F.2d at 537. The Court further noted that ERISA:

focuses not on the direct protection of a beneficiary's interests, but on the protection of the integrity of the plan in which the beneficiary is enrolled.... ERISA grants no private right of action by a beneficiary *qua* beneficiary; rather, it accords beneficiaries the right to sue on behalf of

the entire plan if a fiduciary breaches the plan's terms.

*Id.* at 536 (citing *Russell*, 473 U.S. at 143–44, 105 S.Ct. at 3091).

Given this language, it appears that the Ninth Circuit intended to limit recovery under section 1132(a)(3) to relief that inures to the benefit of the plan as a whole. Cases subsequent to *Sokol* have confirmed this intention. *See, e.g., Horan v. Kaiser Steel Retirement Plan,* 947 F.2d 1412, 1418 (9th Cir.1991) ("Under *Russell* and *Sokol,* the plaintiffs fail to present a fiduciary breach claim [under section 1132(c) ] if the only remedy sought is for their own benefit, rather than for the benefit of the Plan as a whole."). Consequently, Bertozzi's claim for an individual award of compensatory damages under this section fails.

. C.

*Validity of Bertozzi's Claim for Penalties*

Bertozzi's second claim for relief seeks penalties of up to $100 a day, as provided under 29 U.S.C. section 1132(c), for Kaiser's failure to respond to the "request for estimate" form that her mother sent to Kaiser in February. Section 1132(c) provides that:

> [a]ny administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal. . . .

29 U.S.C. § 1132(c).[4] Although Bertozzi does not cite any provision in ERISA which requires a plan administrator to respond to requests for estimates of pension benefits, it appears that she bases her claim on section 1025(b) which provides that an administrator

of an employee pension fund "shall furnish to any plan participant or beneficiary who so requests in writing, a statement indicating . . . the total benefits accrued. . . ." 29 U.S.C. § 1025(a)(1).

. ▇▇ Kaiser admits that it received Mrs. Hodge's "request for estimate" form on February 25, 1992. Under section 1132(c), therefore, it was required to respond to the inquiry within thirty days or approximately March. 25, 1992. It concedes, however, that it did not provide this information to Bertozzi until December 1993, twenty-two months later. Despite this, Kaiser maintains that no penalties are warranted because: (1) Bertozzi does not have standing to sue for the penalties; (2) it acted in good faith in working with Bertozzi to investigate the claim for benefits; and (3) Bertozzi has suffered no prejudice as a result of its failure to respond. Each is discussed in turn.

Both sides concede that there are no cases addressing whether Bertozzi has standing to maintain this action for penalties on the basis of Kaiser's failure to respond to a request made by her mother. There are, however, several cases that allow beneficiaries to maintain an action under section 1132(c) for an administrator's failure to provide requested information. *See, e.g., Rosile v. Aetna Life Ins. Co.,* 777 F.Supp. 862 (D.Kan.1991), *aff'd* 972 F.2d 357 (10th Cir.1992). These cases are distinguishable, however, because they involve facts where the beneficiary was also the requesting party. In this instance, Bertozzi concedes that she did not make the request, her mother did.

Nevertheless, section 1132(a)(1)(A) allows a participant or beneficiary to bring an action for the relief provided under section 1132(c). Kaiser has not challenged Bertozzi's standing to bring suit for the other relief she seeks in this action. The Court sees no reason why her standing should be assessed separately for the purposes of section 1132(c) penalties. In addition, courts routinely allow beneficiaries to bring claims under ERISA for benefits owed to a deceased participant. *See, e.g.,*

---

4. In order to warrant penalties under § 1132(c), the request made must be in writing. For this reason, Bertozzi's allegations that both she and her mother made numerous oral requests for retirement forms cannot form the basis for a penalty claim under section 1132(c). Bertozzi does not claim otherwise.

*Vogel v. Independence Fed. Sav. Bank,* 728 F.Supp. 1210 (D.Md.1990). It is unclear why this broad grant of standing should not also extend to actions for penalties brought under section 1132(c). Finally, Bertozzi maintains that she has standing to bring this cause of action because she is the successor trustee of Mrs. Hodge's living trust of which she is also the sole beneficiary. At least one court has allowed an estate administrator of a deceased participant to bring an action under ERISA to recover benefits due him. *James v. Louisiana Laborers Health and Welfare Fund,* 766 F.Supp. 530 (E.D.La.1991). For all of these reasons, the Court finds that Bertozzi has standing to bring her section 1132(c) claim.

Looking beyond the issue of standing, it appears that Bertozzi's claim for penalties must fail for a separate reason. Although prejudice is not required to prevail on a section 1132(c) penalty claim, most courts do inquire as to whether the claimant has suffered some type of prejudice before exercising the discretion vested in them under section 1132(c). *See, e.g., Rosile,* 777 F.Supp. 862; *First Atl. Leasing Corp. v. Tracey,* 738 F.Supp. 863, 876 (D.N.J.1990). Here, Bertozzi cannot establish that she has been prejudiced as a result of the plan administrator's failure to respond to a request for information. The request involved was simply one for an estimate of the amount of pension benefits Mrs. Hodge had accrued. Kaiser's failure to respond to this request has not prejudiced Bertozzi in any way. She does not allege that the amount has somehow been reduced or changed as a result of Kaiser's failure to respond.

Additional support for denying Bertozzi's section 1132(c) claim is found in the fact that within several weeks of receiving the request, Kaiser was dealing with Bertozzi and sent information to Mr. Hodge regarding his possible eligibility for a spousal annuity. This interaction indicates that Kaiser was not acting in bad faith when it failed to respond to the request, but rather, was working to determine who was entitled to Mrs. Hodge's pension benefits.

Accordingly,

**IT IS HEREBY ORDERED** that:

1. Kaiser's motion for summary judgment on Bertozzi's first counterclaim for an award of benefits is **DENIED.** Although the Court has eliminated two of the three theories on which Bertozzi premises her counterclaim as a matter of law, at trial, Bertozzi will have the opportunity to establish that her mother relied on the SPD when executing the election letter.

2. Kaiser's motion for summary judgment on Bertozzi's second counterclaim for penalties under section 1132(c) is **GRANTED.**