Karen SHAPIRO.

v.

CONTINENTAL CASUALTY COMPANY, et al.

No. CV 05–7177–RGK (RCX).

United States District Court, C.D. California.

Feb. 8, 2006.

Glenn R. Kantor, Peter S. Sessions, Kantor & Kantor, Northridge, CA, for Karen Shapiro.

Keiko J. Kojima, Robert F. Keehn, Galton & Helm, Los Angeles, CA, for Continental Casualty Company, et al.

**Proceedings:** (IN CHAMBERS) PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 10) AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DE 8)

KLAUSNER, District Judge.

## I. INTRODUCTION

This action is brought by Plaintiff Karen O. Shapiro ("Plaintiff") against Defendants Continental Casualty Company ("CNA"), Alexsis, Inc. Employee Health Plan, and Alexsis, Inc., Employee Life Insurance Plan (collectively, "Defendants"), for breach of the Employee Retirement Income Security Act of 1974 ("ERISA"). The Complaint alleges three causes of action: 1) wrongful termination of ERISA benefits due to Plaintiff; 2) injunctive relief and restitution of past benefits, pursuant to 29 U.S.C. § 1132(a), and 3) penalties for failure to provide plan documents under 29 U.S.C. §§ 1024(b)(4) and 1132(c).

## II. FACTUAL BACKGROUND

The following facts are undisputed:

Plaintiff was an employee of Alexis, Inc. and a participant in the Alexsis, Inc. Employee Health Plan and Alexis, Inc. Employee Life Insurance Plan ("Alexis Plan" or "Plan"), which are subject to the provisions of ERISA. (Def.'s Statement of Genuine Issues ("Statement"), No.1.) Pursuant to the terms of her employment with Alexis, Inc., Plaintiff was provided disability insurance through an employee disability plan. *Id.* On March 28, 1996, Plaintiff became totally disabled, and Alexsis terminated her employment soon thereafter. (Def.'s Statement, No. 3.) Plaintiff made a claim for disability benefits to CNA, which was denied on the ground that Plaintiff had ceased to be a member of a class eligible for benefits effective March 29, 1996. (Def.'s Statement, No. 4.) After exhausting her administrative remedies, Plaintiff filed an action in the U.S. District Court seeking a determination of her right to recover the disability benefits that had been denied to her. *Id.* In 1999, the District Court entered judgment in favor of Plaintiff and ordered Defendants to pay the disability benefits owed to Plaintiff (Def.'s Statement, No. 5.)

In February 2003, Plaintiff learned that her health, life, dental and vision ("LHVD") coverage had been terminated. (Def.'s Statement, No. 10.) Upon Plaintiff's protest, Plaintiff's health, vision and dental coverages were continued, but not her life insurance. (Def.'s Statement, Nos.

11, 12.) On October 6, 2003, Plaintiff received written notification that all remaining coverage would terminate, effective December 2003. (Def.'s Statement, No. 24.) Plaintiff alleges that she remains eligible for all LHVD benefits.

In addition, Plaintiff alleges that under 29 U.S.C. § 1132(a), she is entitled to equitable relief, including restitution of all past benefits due under the Plans, and a mandatory injunction prohibiting Defendants from discontinuing Plaintiff's employee benefits. Plaintiff also alleges that under 29 U.S.C. §§ 1024(b)(4) and 1132(c), she is entitled to a statutory penalty for CNA's failure to provide plan documentation upon request.

On October 31, 2003 Plaintiff filed a separate action, CV03–7874–RGK (RCx), against Defendants for the same claims asserted in the current action ("Shapiro I"). (Civil Docket for Case # : 2:03–cv–07874–RGK–RC ("Civil Docket"), Docket Entry No. 1.) The case was assigned to this Court. (Civil Docket.) On February 2, 2005, the Court heard cross-motions for summary judgment submitted by the parties. (Civil Docket, Docket Entry No. 41.) Upon review of the parties' motions, the Court found that the appropriate standard of review was abuse of discretion. (Order re Plaintiff's Motion for Summary Judgment and Defendants' Motion for Summary Judgment ("February 2 Order"), February 2, 2005.) However, the Court also found no administrative record on which to review CNA's denial of benefits. *Id.* Therefore, the Court issued an order denying the parties' motions as moot, and remanding the case for proper review. *Id.*

Upon completion of the review made pursuant to the Court's February 2 Order, and based on CNA's repeat denial of benefits, Plaintiff filed the current action. The original correspondence submitted in Shapiro I, as well as an April 1, 2005 letter of explanation denying Plaintiff's appeal ("April 1 Letter") comprises the administrative record in this case.

The parties have now filed cross-motions for summary judgment, which are currently before this Court. For the following reasons, this Court grants Plaintiff's Motion for Summary Judgment.

## III. *JUDICIAL STANDARD*

Under the Federal Rules of Civil Procedure, summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Upon such a showing, the Court may grant summary judgment "upon all or any part thereof." Fed. R.Civ.P. 56(a), (b).

To prevail on a summary judgment motion, the moving party must show there are no triable issues of fact as to matters upon which it has the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On issues where the moving party does not have the burden of proof at trial, the moving party is required only to show that there is an absence of evidence to support the nonmoving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. at 326, 106 S.Ct. 2548.

To defeat a summary judgment, the non-moving party may not merely rely on its pleadings or on conclusory statements. Fed.R.Civ.P. 56(e). Nor may the non-moving party merely attack or discredit the moving party's evidence. *National Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir.1983). The non-moving party must affirmatively present specific admissible evidence sufficient to create a genuine issue of material fact for

trial. *See Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. 2548.

## IV. *DISCUSSION*

### A. *The Appropriate Standard of Review in this Matter is Abuse of Discretion*

In Shapiro I, this Court addressed the parties' dispute as to the appropriate standard of review, and found that abuse of discretion was the proper standard to apply. (Shapiro I, February 2 Order, pp. 3–4.) In her current motion, Plaintiff asserts that, in light of CNA's most recent defective administrative review, in combination with CNA's prior claim review conduct, conflict of interest is apparent and the Court should reevaluate its finding.

■ A benefit determination under an ERISA plan is reviewed de novo, unless the plan gives the plan administrator authority to determine eligibility of benefits or to construe the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Kearney v. Standard Ins. Co.,* 175 F.3d 1084, 1089 (9th Cir.1999). Where the plan confers discretionary authority, the decision is reviewed for abuse of discretion. *Id.*

■ Plaintiff acknowledges that the Plan contains language that is sufficient to confer discretionary authority upon CNA. (Plaintiff's Opp'n 15:11–12.) Such authority triggers the abuse of discretion standard, which permits the court to review only the administrative record, and to give deference to the plan administrator's interpretation of the plan language. *See Banuelos v. Constr. Laborers' Trust Funds for S. Cal.,* 382 F.3d 897, 904 (9th Cir.2004). Even if the fiduciary has an apparent conflict of interest, courts generally weigh such conflict as a factor in determining whether the fiduciary abused his or her discretion. *Bruch,* 489 U.S. at 115, 109 S.Ct. 948; *Parker v. BankAmerica Corp.,* 50 F.3d 757 (9th Cir.1995). An exception to this general rule exists when "the affected beneficiary has provided material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary." *Atwood v. Newmont Gold Co.,* 45 F.3d 1317, 1323 (9th Cir.1995). In such a case, de novo review is appropriate.

■ To support her argument that this case warrants de novo review, Plaintiff asserts that CNA disregarded this Court's order requiring it to compile an administrative record. Instead, Plaintiff contends that CNA performed no additional investigation, deemed the parties' prior pleading to be the administrative record, and rubber-stamped the conclusions of its counsel.

Upon consideration of the facts in this case, the Court finds Plaintiff's contentions unconvincing. Evidence shows that Defendants invited Plaintiff to submit additional material and information she wished to have considered in their review of Plaintiff's claim. (Stemberger Decl., Exh. 13.) Plaintiff never submitted any such materials. As such, the undisputed facts underlying Plaintiff's claim remained undisturbed. Therefore, as indicated in the April 1 Letter, CNA based its denial of Plaintiff's claim solely on legal interpretation of it rights and obligations under the Plan. (Stemberger Decl., Exh. 12.) In light of these facts, it is unclear what "additional investigation" would be required. Although the Court must still determine whether CNA abused its discretion in its manner of interpretation, it is clear that Plaintiff's arguments fail to provide material, probative evidence showing that CNA's self-interest caused a breach of its fiduciary obligations to her. Therefore, the appropriate standard of review remains abuse of discretion.

### B. CNA's Interpretation of the Policy is Unreasonable and Constitutes Abuse of Discretion

In applying the abuse of discretion standard, the Court's main objective is looking to the administrative record and determining whether CNA's findings of fact and interpretation of the Plan are reasonable. *See Canseco v. Construction Laborers Pension Trust,* 93 F.3d 600 (9th Cir.1996). Abuse of discretion is found where an ERISA plan administrator makes a decision that is arbitrary and capricious. *Jordan v. Northrup Grumman Welfare Benefit Plan,* 370 F.3d 869, 875 (9th Cir.2004). "Review under the 'clearly erroneous' standard is significantly deferential, requiring a 'definite and firm conviction' that a mistake has been committed." *Concrete Pipe & Products, Inc. v. Constru. Laborers Pension Trust,* 508 U.S. 602, 623, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993).

Defendants argue, and the April 1 Letter states, that Plaintiff's LHVD coverage terminated on December 31, 1998, when the Plan was replaced by the RSKCo Comprehensive Group Insurance Plan ("RSKCo Plan") as part of an internal corporate reorganization.[1] Plaintiff contends that, despite replacement by the RSKCo Plan, the terms of the Alexsis Plan provided that Plaintiff, as a disabled employee, would remain in a class eligible for continuing health and life coverage for an unlimited time. For the following reasons, the Court agrees with Plaintiff.

As set forth in Section II, *supra,* the parties do not dispute the pertinent underlying facts. Specifically, the parties agree that: Plaintiff was a participant of the Alexsis Plan, which provided both long-term disability and LHVD coverage. Plaintiff became totally disabled on March 28, 1996, and Alexsis terminated her employment shortly thereafter. Plaintiff filed a long-tern disability claim, which was denied. In 1999, Plaintiff received judgment from the U.S. District Court ordering Alexsis to pay the disability benefits owed to Plaintiff under the Plan. In April 2000, Plaintiff's LHVD coverage was terminated. From April 2000 until September 2002, Plaintiff received health insurance through COBRA. In February 2003, Plaintiff learned of the LHVD coverage termination. Thereafter, Plaintiff disputed Defendants' actions. Although Defendants have extended medical, dental and vision coverage under COBRA since this dispute began, Plaintiff's LHVD coverage under the Alexsis Plan has never been reinstated. While the parties agree as to the foregoing facts, the parties dispute whether Plaintiff's LHVD coverage was properly terminated under the terms of the Plan. As such, the determining factor for this Court to consider is one of contract interpretation only.

The "Termination of Insurance" section of the Plan's LHVD policy provides the conditions under which a participant's coverage terminates. (Stemberger Decl., Exh. 1, p. 88.) According to this section, "Absence from work due to the following will not be treated as a termination of membership [in a class eligible for insurance] until the end of the period shown: ... 3. Disability for up to an unlimited time." *Id.* Directly below this provision, a second provision states, "The insurance of all Covered Persons will terminate immediately: ... 2. On the date of termination of the policy." *Id.* Although the latter provision seems to provide a limitation to

---

1. The arguments set forth in Defendants' motion papers are substantially identical to the reasons for denial set forth in the April 1 Letter. As such, the Court's analysis of Defendants' assertions, contentions or arguments also serves as a review of the April 1 Letter contained in the Administrative Record.

the first provision, it is applicable only to "Covered Persons," which is defined in the policy as "an Employee or Dependent who is insured under the policy." (Stemberger Decl., Exh. 1, p. 42.) "Employee," in turn, is defined as a person who is "1". Employed on a full-time or part-time basis by the Holder and 2. In a class eligible for insurance.... *Id.* The plain and ordinary meaning of the two provisions indicates that the insurance coverage vests for an unlimited time for all disabled persons who are not "Covered Persons." Since Alexsis terminated Plaintiff's employment in 1996, Plaintiff's LHVD benefits vested because she was both disabled and not a "Covered Person" on December 31, 1998, when the Alexsis Plan was terminated by the RSKCo Plan.[2] Because any new employer-provided welfare plan would apply only to current employees (and possibly their dependents), this interpretation follows not only the plain and ordinary meaning of the Plan language, but also a general policy of fairness and reasonable expectations.

According to Defendants, other language in the same section indicates that "Covered Person" includes disabled former employees. Specifically, a "Proviso" in the section states that if a "Covered Person" is totally disabled on the date that the insurance contract is terminated, benefits for medical care and treatment will be continued until the earliest of a variety of specified dates. (Stemberger Decl., Exh. 1, p. 88.) Defendants reason that "there would be no need for this proviso—this is, one specifying the circumstances under which the coverage of a disabled employee cannot be terminated immediately—if [P]laintiff was correct in her argument that medical coverage for disabled employees must continue indefinitely." (Def.'s Opp'n to Pl.'s Motion for Summary Judgment, 8: 4–8.)

Defendants' argument is unconvincing. First, in other areas of the policy, Defendants specifically use the term "member," rather than "Covered Persons" to refer to *all* individuals under the Plan (as opposed to just covered employees or dependents). (*See* Stemberger Decl., Exh. 1, p. 88.) This distinction indicates that in the relevant termination provisions, Defendants deliberately chose to use "Covered Persons," as defined in the policy. Second, the plain language of the proviso states that if a "Covered Person" is totally disabled when the policy terminates, benefits for medical care and treatment continue for a specified amount of time. In other words, individuals who are totally disabled on the date the policy is terminated, and insured under the policy *as an Employee or Dependent,* will continue to receive medical benefits for a certain amount of time. Even Defendants' own statement that the proviso allows for continual coverage of disabled *employees* confirms this interpretation. *See id.* As previously established, Plaintiff was not a disabled employee at the time the Alexsis Plan was terminated because she ceased being an employee nearly two years prior. Certain portions of Defendants arguments seem to imply that an individual who is totally disabled cannot be an employee. If this was true any distinction between a disabled employee and a disabled former employee would be extinguished. However, Defendants have failed to make this argument or introduce any evidence supporting such a position. Without evidence to the contrary, it would be unreasonable to rule out the possibility that a totally disabled individual could retain his or her employment status, at least for a certain period of time.[3] Based on a plain reading of the

---

**2.** Plaintiff argues that Defendants fail to provide any competent evidence that the Alexsis Plan was, in fact, terminated. For purposes of the analysis herein, the Court assumes valid termination of the Plan, without deciding the issue.

**3.** The undisputed facts indicate that Plaintiff's employment was terminated around the time

policy language, it is those individuals who would not have vested rights in the insurance benefits, but receive continued benefits for a specified period of time under the Proviso.

Defendants also argue that the Alexsis Plan's long-term disability ("LTD") policy incorporates language that clearly provides for vesting. In comparison, no such language exists in the LHVD portion of the Plan. Again, Defendants' argument is unavailing. The vesting language in the LTD policy states, " Termination will not affect a covered loss which began before the date of termination." (Stemberger Decl., Exh. 1, p. 133.) By comparison, the language of the LHVD policy states, "Absence from work due to the following will not be treated as a termination of membership [to a class eligible for insurance] until the end of the period shown: ... 3. Disability for up to an unlimited period." In other words, absence from work because of disability will not terminate insurance eligibility for up to an unlimited period of time. While the vesting language in the LTD policy reads differently than the language in the LHVD policy, the LHVD language clearly vests insurance coverage to those members who become disabled.

 Even if Defendants' arguments availed their position, at best, the Proviso and LTD policy language would serve only to create an ambiguity in the policy language, which is susceptible to two different interpretations. As held by the Ninth Circuit, where the ERISA plan is neither a result of collective bargaining nor self-funded, the interpretation most favorable to the insured should be adopted. *Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 539 (9th Cir.1990); *Winters v. Costco Wholesale Corp.*, 49 F.3d 550, 554 (9th Cir.1995).

In light of the foregoing, this Court finds that CNA's interpretation of the Plan is unreasonable, and its decision to deny LHVD coverage to Plaintiff constitutes abuse of discretion. Therefore, the Court finds that Plaintiff remains eligible for group primary and dependent medical and life insurance coverage.

### C. *Penalties against CNA are Warranted for Failure to Produce Plan Documents*

Plaintiff contends that, beginning February 2003, she made numerous written requests for copies of the Alexsis Plan and RSKCo Plan documents upon which CNA was basing its termination of her LHVD coverage. To date, neither of the plan documents have been provided. Therefore, Plaintiff seeks statutory penalties of $100 per day commencing one month following Plaintiff's first written request, for a total of $80,000. For the following reasons, this Court grants Plaintiff's request in part.

29 U.S.C. § 1024(b)(4) requires a plan administrator to provide the claimant, upon written request, with copies of the relevant plan documents, including but not limited to the summary plan description, trust agreement, or contract pursuant to which the plan is established or operated. Under 29 U.S.C. § 1132(c)(1)(B) (" § 1132(c)"), if the administrator fails to fulfill its obligations within thirty (30) days of the written request, at the Court's discretion, the administrator may be personally liable for penalties up to $100 per day for every day the documents are not provided to the claimant.

 Evidence shows that, on February 24, 2003, Plaintiff first requested the docu-

---

she became totally disabled. However, neither party has offered any explanation as to

the timing of her termination.

ments supporting CNA's decision to terminate her LHVD coverage and provide limited benefits under COBRA. (Stemberger Decl., Exh. 3.) From that time, the Administrative Record indicates that Plaintiff made at least two other similar written requests to CNA. (Stemberger Decl., Exhs. 6 and 7.) Despite Plaintiff's repeated requests, CNA never provided Plaintiff with copies of any plan documents pursuant to those requests. In light of CNA's repeated failure to comply with its statutory obligations, the Court finds that the degree of CNA's noncompliance warrants the imposition of penalties.

In opposition, Defendants contend that Plaintiff should not receive statutory penalties because she was not prejudiced. First, Defendants argue that Plaintiff already had in her possession the Alexsis Plan document she requested from CNA. Moreover, Defendants discovered that CNA could not provide her with the operative version of the plan description because Defendants did not have a complete copy of that document. In fact, it was Plaintiff who ultimately supplied Defendants with the operative Plan documents. Not only does this argument raise questions regarding Defendants ability to adequately investigate her claim at the time it was made, it is not well-taken as a defense to penalties. Plaintiff's possession of the Plan documents, presumably received during her employment, is not an adequate excuse for failure to comply with the statute. Evidence shows the existence of multiple versions of the Alexsis Plan description. (Keehn Decl., ¶ 5.) Without disclosure, Plaintiff could not have known if the documents upon which CNA relied was the same as those upon which she relied, particularly since CNA failed to provide a formal response explaining its adverse de-

termination until ordered to do so in Shapiro I.[4] Relieving a plan administrator from its disclosure obligations because the claimant already has a copy of the operative plan would defeat the purpose and intent of ERISA.

■ Second, Defendants argue that Plaintiff has no right to the RSKCo Plan because only the Alexsis Plan governs this case. Again, Defendants' argument is unavailing. According to the April 1 Letter,

> The RSKCo disability policy was changed to mirror certain CNA policies .... Specifically, this change provided for the termination of each RSKCo employee (including all former Alexsis employees on disability) upon his or her becoming entitled to long-term disability benefits. This policy also provides for 29 months of company-paid medical coverage.

(Stemberger Decl., Exh. 12, p. 211.) This language clearly indicates that CNA's adverse determination against Plaintiff was based on an interpretation of not only the Alexsis Plan, but also the RSKCo Plan. As such, Plaintiff was entitled to the RSKCo Plan documents as well.

■ Finally, Defendants argue that each of Plaintiff's verbal and written requests for information was followed by a prompt, retroactive reinstatement of medical benefits, resulting in no lapse of coverage for Plaintiff. According to Defendants, this further demonstrates the complete absence of prejudice to Plaintiff due to CNA's purported failure to produce the requested documents. The fact that Plaintiff may have suffered no economic harm due the reinstatement of her medical benefits does not relieve CNA

---

4. Indeed, given Defendants inability to locate a copy of the 1995 Plan documents, it is not outside the realm of possibility that the par-

ties were, in fact, referring to two different documents.

from its statutory obligations, and prejudice is not required to prevail on a § 1132(c) claim. *See Kaiser Permanente Employees Pension Plan v. Bertozzi*, 849 F.Supp. 692 (N.D.Cal.1994). However, Defendants' prompt extension of Plaintiff's medical coverage, which mitigated any prejudice suffered by Plaintiff serves as a guide for this Court's determination. *See Sedlack v. Braswell Servs. Group Inc.*, 134 F.3d 219, 226 (4th Cir.1998). Taking into consideration all relevant factors, this Court, in its discretion, imposes a statutory penalty of $10,000 against CNA in favor of Plaintiff.

## IV. *EVIDENTIARY OBJECTIONS*

To the extent this Court has relied on the parties' evidence, any objections to that evidence are overruled.

## V. *CONCLUSION*

Based on the foregoing, Plaintiff's Motion for Summary Judgment is granted. However, Plaintiff's request for statutory penalties in the amount of $80,000 is reduced to $10,000. In light of this ruling, Defendants' Motion for Summary Judgment is denied as moot. Plaintiff is ordered to submit a Proposed Judgment consistent with this Order within 10 days of the date of this Order.

**IT IS SO ORDERED.**